Alfred G. GEROSA, Joseph Mitrione, John J. Pylilo, Paul M. Manita, Angelo Scagnelli, Bert Gallo, John Pagliuca, Trustees, Cement Masons' Local 780 Pension Fund, Plaintiffs–Appellees–Cross–Appellants,

v.

SAVASTA & COMPANY, INC., Defendant–Appellant–Cross–Appellee,

Neil J. Savasta, Mark Schor, Defendants.

No. 02–9005, 02–9007.

United States Court of Appeals, Second Circuit.

Argued: March 25, 2003.

Decided: May 19, 2003.

Mark J. Alonso, Alonso, Andalkar & Kahn, P.C., New York, NY, for Defendant–Appellant–Cross–Appellee Savasta & Company, Inc.

Richard H. Markowitz (Nancy A. Walker, on the brief), Markowitz & Richman, Philadelphia, PA, for Plaintiffs–Appellees–Cross–Appellants Alfred G. Gerosa, Joseph Mitrione, John J. Pylilo, Paul M. Manita, Angelo Scagnelli, Bert Gallo, and John Pagliuca, Trustees, Cement Masons' Local 780 Pension Fund.

Elizabeth Hopkins, Counsel for Appellate and Special Litigation (Eugene Scalia, Solicitor of Labor, Timothy D. Hauser, Associate Solicitor for Plan Benefits Security Division, Paul C. Adair, Trial Attorney, on the brief), U.S. Department of Labor, Office of the Solicitor, Washington, D.C., for Amicus Curiae Elaine L. Chao, Secretary of Labor.

Before: KATZMANN, B.D. PARKER, and RAGGI, Circuit Judges.

KATZMANN, Circuit Judge.

The Cement Masons' Local 780 Pension Fund is a retirement benefits plan established under the Employee Retirement Income Security Act ("ERISA"). The Plaintiffs, Alfred G. Gerosa and other trustees of the Fund, allege that, as a result of the negligence of their actuary, the Defendant, Savasta & Company, Inc., the Fund is now dangerously underfunded. Accordingly, they brought suit against Savasta under ERISA's civil enforcement section, 29 U.S.C. § 1132(a)(3) (2000), as well as under several state-law theories of liability. Following the Defendant's 12(b)(6) Motion, the District Court for the Southern District of New York (Alvin K. Hellerstein, *J.*) dismissed the Trustees' state-law claims as preempted, but denied the motion to dismiss the claim under ERISA. The District Court's dual determinations relied in large part on our opinion in *Diduck v. Kaszycki & Sons Contractors, Inc.,* 974 F.2d 270 (2d Cir.1992). Because we now conclude that *Diduck* has been superseded by subsequent decisions of the Supreme Court, we must reverse both holdings and remand for further proceedings.

**Background**

The individual plaintiffs in this case are each trustees of the Plaintiff, Cement Masons' Local 780 Pension Fund, a multiemployer pension plan organized pursuant to the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001–1461 (2000 & Supp.2002). Among its numerous other demands, ERISA requires the administrator of each plan annually to obtain and publish an "actuarial statement," which is in essence an analysis of the plan's financial condition by a professional actuary. *Id.* §§ 1023(a)(4)(A), (d).

The Plaintiffs' Complaint, which for purposes of this appeal we accept as true, alleges that in fulfillment of their duties, the Trustees hired the Defendant, Savasta & Company, Inc., to serve as the Plan's actuary and prepare its actuarial statements. In each of its actuarial statements from 1994 through 1997, Savasta reported that the Plan was actually over-funded. (In other words, the Plan's assets were more than sufficient to pay all projected benefits claims.) The Plaintiffs allege that, in reliance on this information, they amended the Plan to distribute the excess funding to the Plan beneficiaries in the form of improved benefits. Savasta's anal-

ysis at the time indicated that, even under the more generous provisions, the plan was still overfunded by a small margin.

Savasta's actuarial statement at the end of the next year, 1998, however, revealed a dramatically different situation. Now, Savasta projected, the Plan's assets would cover only 71.3% of the Plan's projected liabilities. Savasta's explanation for this disparity, according to the Complaint, was that there had been a "data correction." When pressed for more information, Savasta reported that it could not offer any better explanation, because all of its records upon which it had based its pre–1999 calculations were missing.

The Trustees subsequently filed this suit, on behalf of themselves and the Plan, seeking to recover from Savasta the anticipated shortfall between the Plan's liabilities and its assets.[1] The Complaint sought redress under the civil enforcement provisions of ERISA, *see* 29 U.S.C. § 1132(a)(3), as well as under state-law theories of promissory estoppel, breach of contract, and professional malpractice.[2]

Savasta then moved to dismiss the Complaint, pursuant to Fed.R.Civ.P. 12(b)(6), arguing that the remedies sought by the Plaintiffs are not available under ERISA, and that ERISA preempts the state law claims. The District Court denied the motion to dismiss the ERISA claim, holding that the Plaintiffs could obtain consequen-

tial damages under the statute. *See Gerosa v. Savasta*, 189 F.Supp.2d 137, 152 (S.D.N.Y.2002). However, the District Court granted the motion to dismiss Plaintiffs' state-law claims, finding them preempted by ERISA. *Id.* It also granted both parties' motions to file an interlocutory appeal, pursuant to 28 U.S.C. § 1292(b). *Id.* Another panel of this Court agreed that we should hear both Savasta's appeal and the Plaintiffs' cross-appeal. The Secretary of Labor filed an *amicus* brief urging us to reverse the district court, and we invited the Secretary to participate in oral argument.

## Discussion

### I.

ERISA places great responsibilities upon the fiduciaries of a plan to protect the interests of the plan's beneficiaries. *See, e.g.,* 29 U.S.C. §§ 1101–1112 (describing some responsibilities of ERISA fiduciaries). Correspondingly, it also gives to fiduciaries a wide array of powers to superintend the operation of the plan. Most pertinently for the Plaintiffs here, fiduciaries may bring suit in federal court "to enjoin any act or practice which violates any provision of [ERISA Title I] or the terms of the plan, or ... to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of [ERISA Title I] or the terms of the plan." 29 U.S.C. § 1132(a)(3).[3] Savas-

---

1. The Complaint is not entirely clear whether it seeks compensation only for the shortfall arising out of the 1997 decision to increase benefits. Conceivably, the Plaintiffs might also attempt to prove that, as a result of Savasta's alleged negligence, they failed to set contribution rates at an appropriate level even before the decision to increase benefits was made.

 It also bears mention that the Plaintiffs are not now free to reduce already-accrued benefits to affordable levels. *See* 29 U.S.C. § 1054(g)(1) ("The accrued benefit of a par-

ticipant under a plan may not be decreased by an amendment of the plan ....").

2. Although the Complaint does not include a separate heading for a malpractice tort claim, it describes the basis for Savasta's breach of contract as Savasta's negligent failure to carry out its services "in a professional manner and in accordance with the professional standards applicable to actuaries of employee benefit plans."

3. ERISA also authorizes fiduciaries to sue other fiduciaries who breach their duties. *See*

ta concedes that some actuarial conduct is regulated by ERISA, and therefore that its negligence is at least arguably an act or practice which violates the statute.[4]

■ The core of the dispute here is thus not whether ERISA authorizes suit against Savasta, but rather whether the remedy the Plaintiffs seek falls within such "other appropriate equitable relief" as they may obtain. The Complaint asks for an order directing "defendants to reimburse the plaintiffs for the shortfall the Pension Fund will experience as a result of defendants' violation of their duties under ERISA." In determining the propriety of a remedy, we must look to the real nature of the relief sought, not its label. *See Great–West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002); *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 255, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993).

■ Section 1132(a)(3) permits money awards only in very limited circumstances. Classic compensatory and punitive damages are never included within "other appropriate equitable relief." *Id.; see Lee v.*

*Burkhart*, 991 F.2d 1004, 1011 (2d Cir. 1993). With regard to non-fiduciary defendants, we have said that the "only conceivable equitable claim" for cash money lies under the antique equitable remedy of restitution. *Strom v. Goldman, Sachs & Co.*, 202 F.3d 138, 144–45 (2d Cir.1999) (citing *Geller v. County Line Auto Sales, Inc.*, 86 F.3d 18 (2d Cir.1996)). In order to make out a claim for restitution, a plaintiff must show that the defendant has unjustly received from the plaintiff a benefit, such as a payment, *see Great–West*, 534 U.S. at 213, 122 S.Ct. 708; *Geller*, 86 F.3d at 22, or that the defendant holds funds or property that in good conscience should belong to the plaintiff, *see Great–West*, 534 U.S. at 213, 122 S.Ct. 708.

■ We agree with the District Court that the Plaintiffs have not alleged sufficient facts to make out a claim for restitution. The moneys sought by the Plaintiffs were never in Savasta's possession; rather, they are simply consequential damages resulting from Savasta's alleged negligence.[5] Like the defendants in *Geller*,

---

29 U.S.C. §§ 1109, 1132(a)(2). There is no allegation here, however, that Savasta acted as a fiduciary. We have previously agreed with the Department of Labor that actuaries, attorneys, and accountants are not ordinarily fiduciaries unless they render investment advice or are given special authority over plan management. *See F.H. Krear & Co. v. Nineteen Named Trustees*, 810 F.2d 1250, 1259–60 (2d Cir.1987) (citing 29 C.F.R. § 2509.75–5 (1986)); *see also Geller v. County Line Auto Sales, Inc.*, 86 F.3d 18, 21 (2d Cir.1996). The Department still holds that view. *See* 29 C.F.R. § 2509.75–5 (2002) ("[A]ttorneys, accountants, actuaries and consultants performing their usual professional functions will ordinarily not be considered fiduciaries ....")

**4.** Among other provisions, ERISA states that "the enrolled actuary shall utilize such assumptions and techniques as are necessary to enable him to form an opinion." 29 U.S.C. § 1023(a)(4)(B). The Supreme Court has pre-

viously assumed, without deciding, that ERISA provides a right of action against non-fiduciary actuaries in similar circumstances. *See Mertens v. Hewitt Assocs.*, 508 U.S. 248, 254–55, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993). Since the possibility of a right of action is at least colorable, our jurisdiction is not implicated. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) (citing *Bell v. Hood*, 327 U.S. 678, 682–83, 66 S.Ct. 773, 90 L.Ed. 939 (1946)). Therefore, we may accept Savasta's concession. However, because we ultimately hold that, even if there is such a right of action, it cannot benefit the Plaintiffs here, we, too, do not actually decide the question today.

**5.** The Plaintiffs do not appear to assert that the fees they paid to Savasta for duties Savasta performed inadequately can provide the basis for a restitution claim. We therefore

*Savasta* was never "unjustly enriched," and therefore no restitution claim can lie against it. 86 F.3d at 22.

■ Although the District Court in its thoughtful decision found that the Plaintiffs have no restitution claim, it concluded, in reliance on our opinion in *Diduck v. Kaszycki & Sons Contractors, Inc.*, 974 F.2d 270 (2d Cir.1992), that it had the authority to imply a damages remedy under ERISA. *See Gerosa v. Savasta*, 189 F.Supp.2d 137, 150–52 (S.D.N.Y.2002). In *Diduck*, 974 F.2d at 274–75, we considered a claim by participants and beneficiaries in an ERISA plan against a non-fiduciary, who was alleged to have knowingly participated in a plan fiduciary's breach of duty. We acknowledged that ERISA does not expressly or even impliedly create a right of action in those circumstances. *See id.* at 280. We found, however, that the underlying purposes of ERISA would be frustrated in the absence of such liability. *See id.* at 281. Accordingly, we concluded that there was a "need for interstitial lawmaking," and determined that we would "recogniz[e] a federal common law right of action in favor of plan participants against non-fiduciaries." *Id.* at 280–81.

We think, however, that this aspect of *Diduck* has not survived subsequent Supreme Court determinations. In *Mertens*, the Court rejected the central holding of *Diduck*, finding that non-fiduciaries who knowingly participate in a fiduciary breach cannot be liable for ordinary money damages. 508 U.S. at 255, 113 S.Ct. 2063; *see also Mullins v. Pfizer, Inc.*, 23 F.3d 663, 666 (2d Cir.1994) (avoiding *Mertens* problem by assuming defendant was a fiduciary). In rejecting several arguments based on ERISA's general purposes, the Court emphasized ERISA's comprehensiveness, as well as the clear text of the ERISA civil

remedies provisions, which in combination it argued provided " 'strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly.' " *Mertens*, 508 U.S. at 254, 261, 113 S.Ct. 2063 (quoting *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 146–47, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985)). Twice in its most recent term, the Court has repeated its belief that ERISA's express remedies, as the product of long and careful study and compromise, should remain exclusive. *See Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355, 375–76, 122 S.Ct. 2151, 153 L.Ed.2d 375 (2002); *Great–West*, 534 U.S. at 209, 122 S.Ct. 708. We see little room in this framework for judicially-created, "interstitial" remedies.

Nor are we convinced by the District Court's efforts to distinguish *Mertens* and *Great–West*. The arguments it offers, although quite thoughtful, are ultimately not in keeping with the Supreme Court's directives. For example, the District Court argued that *Mertens* was not controlling because it believed the purposes of exempting non-fiduciaries from joint and several liability do not apply when the trustees are plaintiffs, not defendants. *See Gerosa*, 189 F.Supp.2d at 150–51. Similarly, the District Court responded to *Great–West* by pointing to Congress's underlying goals in enacting ERISA. *Id.* at 151–52. *Great–West* is quite explicit, however, that "[i]t is ... not our job to find reasons for what Congress has plainly done." 534 U.S. at 217, 122 S.Ct. 708. That comment, taken in the context of other recent Court opinions applying a strong presumption that creation of an express remedy clearly forecloses others, *see, e.g., Alexander v. Sandoval*, 532 U.S. 275, 286–87, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001), makes evident that we are no longer free to fill in unwritten gaps in

need not consider whether such a remedy would be authorized under § 1132(a)(3).

ERISA's civil remedies. Accordingly, whatever may be the truth of the District Court's observation that the *Diduck* approach is "sounder" than the *Mertens* alternative, *Gerosa*, 189 F.Supp.2d at 150, the Supreme Court has instructed that it is not for us to decide the best ERISA remedial scheme.[6]

In short, our conclusion that the Plaintiffs have no claim for restitution means that there is no remedy available under ERISA to redress the grievance alleged in their Complaint. We must reverse the judgment of the District Court on this ground.

## II.

■ The Plaintiffs also cross-appeal the District Court's determination that ERISA preempts their state-law claims. In urging us to affirm, Savasta asks us to find, in effect, that Congress intended completely to immunize actuaries from claims for damages. We disagree, and instead join a chorus of the Courts of Appeals in ruling that ERISA does not preempt "run-of-the-mill" state-law professional negligence claims against non-fiduciaries. Again, however, we have occasion to revisit our opinion in *Diduck*, which held to the contrary.

### A. The ERISA Preemption Standard

■ Preemption is fundamentally a question of congressional intent. *See N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995). Naturally, as with any matter of Congress's intentions, we must begin with the statutory language. *Id.; see also Rush Prudential*, 536 U.S. at 364–65, 122 S.Ct. 2151. ERISA provides that it "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). As the Supreme Court has recognized, however, ERISA's nearly limitless "relates to" language offers no meaningful guidelines to reviewing judges. *Rush Prudential*, 536 U.S. at 365–66, 122 S.Ct. 2151; *Travelers*, 514 U.S. at 655–56, 115 S.Ct. 1671. Therefore, "[w]e simply must go beyond the unhelpful text and the frustrating difficulty of defining its key term, and look instead to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive." *Id.* at 656, 115 S.Ct. 1671; *see also Egelhoff v. Egelhoff*, 532 U.S. 141, 147, 121 S.Ct. 1322, 149 L.Ed.2d 264 (2001); *Cal. Div. of Labor Standards Enforcement v. Dillingham Constr., N.A.*, 519 U.S. 316, 325, 117 S.Ct. 832, 136 L.Ed.2d 791 (1997); *Cicio v. Does*, 321 F.3d 83, 93 (2d Cir.2003). In conducting that analysis, we begin with the assumption that "Congress does not intend to supplant state law," *Travelers*, 514 U.S. at 654–55, 115 S.Ct. 1671 (citing *Maryland v. Louisiana*, 451 U.S. 725, 746, 101 S.Ct. 2114, 68 L.Ed.2d 576 (1981)), a presumption that is particularly strong for "state action in fields of traditional state regulation," *id.* (citing *Hillsborough County v. Automated Med. Labs., Inc.*, 471 U.S. 707, 719, 105

---

**6.** We emphasize that our holding is limited to ERISA's civil remedial provisions, 29 U.S.C. § 1132. In other respects, we continue to carry out Congress's intent that we develop "a federal common law of ERISA based on principles developed in evolution of the law of trusts." *Lee*, 991 F.2d at 1011 (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 110, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989)). Nor do we mean to say that common-law principles are never relevant to questions involving remedies. *See, e.g., Harris Trust & Sav. Bank v. Salomon Smith Barney Inc.*, 530 U.S. 238, 250–51, 120 S.Ct. 2180, 147 L.Ed.2d 187 (2000) (analyzing scope of "appropriate equitable relief" by reference to common law of trusts). We hold only that the limited text of ERISA's civil remedies is inconsistent with judicial discovery of new liabilities.

S.Ct. 2371, 85 L.Ed.2d 714 (1985); *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947)).

Amidst the proliferation of lower court opinions attempting to apply the Supreme Court's still not entirely determinate principles, several clear trends have emerged. The most pertinent for our purposes is a focus on the core ERISA entities: beneficiaries, participants, administrators, employers, trustees and other fiduciaries, and the plan itself. Courts are reluctant to find that Congress intended to preempt state laws that do not affect the relationships among these groups. *See, e.g., LeBlanc v. Cahill,* 153 F.3d 134, 147 (4th Cir.1998); *Ariz. State Carpenters Pension Trust Fund v. Citibank, (Ariz.),* 125 F.3d 715, 724 (9th Cir.1997); *In Home Health, Inc. v. The Prudential Ins. Co. of Am.,* 101 F.3d 600, 605–06 (8th Cir.1996); *Morstein v. Nat'l Ins. Servs., Inc.,* 93 F.3d 715, 722–23 (11th Cir.1996), *cert. denied,* 519 U.S. 1092, 117 S.Ct. 769, 136 L.Ed.2d 715 (1997); *Airparts Co. v. Custom Benefit Servs. of Austin, Inc.,* 28 F.3d 1062, 1066 (10th Cir.1994); *Perkins v. Time Ins. Co.,* 898 F.2d 470, 473–74 (5th Cir.1990). In addition, state laws that would tend to control or supersede central ERISA functions—such as state laws affecting the determination of eligibility for benefits, amounts of benefits, or means of securing unpaid benefits—have typically been found to be preempted. *See, e.g., Cicio,* 321 F.3d at 95; *LeBlanc,* 153 F.3d at 147 (noting that "Congress intended to preempt state laws providing alternate enforcement mechanisms for employees to obtain ERISA plan benefits") (internal quotations and citation omitted); *Airparts,* 28 F.3d at 1064–65; *Howard v. Parisian, Inc.,* 807 F.2d 1560, 1565 (11th Cir.1987).

One product of these tendencies has been that courts routinely find that garden-variety state-law malpractice or negligence claims against non-fiduciary plan advisors, such as accountants, attorneys, and consultants, are not preempted. *See, e.g., LeBlanc,* 153 F.3d at 138; *Ariz. Carpenters,* 125 F.3d at 717–18; *Coyne & Delany Co. v. Selman,* 98 F.3d 1457, 1460 (4th Cir.1996); *Custer v. Sweeney,* 89 F.3d 1156, 1166–67 (4th Cir.1996); *Airparts,* 28 F.3d at 1067; *Painters of Philadelphia Dist. Council No. 21 Welfare Fund v. Price Waterhouse,* 879 F.2d 1146, 1152–53 (3d Cir.1989); *Harmon City, Inc. v. Nielsen & Senior,* 907 P.2d 1162, 1170 (Utah 1995). The Third Circuit's reasoning in *Philadelphia Painters* is typical. Observing that "state law has traditionally prescribed the standards of professional liability," *Philadelphia Painters,* 879 F.2d at 1152, the court concluded that such suits merely placed the plaintiff ERISA plan in the same position as any other state economic actor, *id.* at 1153 n. 7. There was therefore no reason to believe that Congress would have wanted to preempt the claim. *Id.*

Savasta argues, however, that the relationship between a plan and its actuary is not the same as the routine dealings a plan might have with its lawyer or its landlord. ERISA, it claims, sets out a code of behavior for actuaries, which in Savasta's view is enforceable through a suit by a "fiduciary ... to obtain ... appropriate equitable relief ... to enforce any provisions of [ERISA Title I]." 29 U.S.C. § 1132(a)(3). Pointing to the Supreme Court's opinion in *Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990), Savasta claims that Congress's decision to provide a remedy, however limited, for actuarial negligence necessarily displaces any state-law regulation of the same conduct.

As in Part I, we assume, without deciding, that ERISA would give the Trustees a claim against Savasta; nevertheless, we

are not convinced that *Ingersoll* controls the outcome of this case. In *Ingersoll,* the Supreme Court held that ERISA preempted a Texas wrongful discharge statute that had been construed to extend to employees who were terminated because the employer wished to avoid making plan contributions on their behalf. 498 U.S. at 136–37, 111 S.Ct. 478. An existing ERISA provision, 29 U.S.C. § 1140, already targeted the same conduct, and was enforceable through § 1132. The Court thus observed that permitting parallel state actions could expose multi-state employers to several different standards simultaneously, thereby transgressing a central ERISA goal of protecting the planning interests of contributing employers. *Id.* at 142, 111 S.Ct. 478. Another problem with the Texas statute, the Court found, was that "Congress intended § [1132](a) to be the exclusive remedy for rights guaranteed under ERISA." *Id.* at 144, 111 S.Ct. 478 (citation omitted). Otherwise, " '[t]he policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA.' " *Id.* (quoting *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 54, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987)).

 In our view *Ingersoll* represents not a categorical rule barring state causes of action that might overlap with ERISA, but rather an application of the general principle that preemption depends on whether state remedies are consistent with ERISA's core purposes. Taken alone, the limited language of § 1132 permits two possible inferences: that the remedies listed are the only remedies available under any law, or merely that the remedies listed are an exclusive enumeration of what can be granted under *federal* law.

Under the latter reading, obviously, parallel state-law remedies would still be permissible. It was ERISA's broad preemption language, along with consideration of its larger purpose in "encouraging the formation of employee benefit plans" through reduced planning costs, that supplied the crucial additional inference in *Ingersoll* that no such state claims could be permitted. *See Ingersoll,* 498 U.S. at 143–44, 111 S.Ct. 478; *see also Rush Prudential,* 536 U.S. at 379, 122 S.Ct. 2151 (explaining *Ingersoll* as based on "ERISA's policy of inducing employers to offer benefits by assuring a predictable set of liabilities, under uniform standards of primary conduct and uniform remedial orders and awards"). However, where there is no comparable statutory objective that would be served by preemption, the ERISA text is open to the possibility that alternate state remedies might be available. Therefore, the extent to which ERISA's remedial provisions preempt state law is not necessarily absolute; as with any provision, preemption must be considered in light of Congress's purposes in enacting the statute.

Our approach finds common ground with the reasoning of several other courts, as well as the implicit logic of one of our prior holdings. For example, in *Trustees of the AFTRA Health Fund v. Biondi,* 303 F.3d 765, 777–79 (7th Cir.2002), the Seventh Circuit distinguished *Ingersoll* and found that, notwithstanding the possibility of equitable relief under ERISA, a state-law fraud claim by a plan's trustees against a participant was not preempted, because "the Trustees' common law fraud claim does not implicate any of ERISA's fundamental concerns." Similarly, in *LeBlanc,* the Fourth Circuit allowed a common-law fraud claim by a set of trustees against the plan's investment advisor to proceed because it found that such claims would "not undermine any of ERISA's objectives." 153 F.3d at 147. This in spite of the fact

that the plaintiffs also had a claim under ERISA. *Id.* at 148. An earlier Fourth Circuit opinion appears to view the existence of an "alternative enforcement mechanism" as a basis for preemption only (or at least most forcefully) when it allows an alternate avenue for *employees* to sue. *Coyne & Delany,* 98 F.3d at 1471. In *Geller,* we likewise permitted the plaintiff's state-law fraud claim to stand, regardless of some available equitable remedies under ERISA, *see* 86 F.3d at 21–23, because "the preemption provision should not be read to contravene the statute's underlying design," *id.* at 23.[7] *But see Rutledge v. Seyfarth, Shaw, Fairweather & Geraldson,* 201 F.3d 1212, 1219 (9th Cir.2000) (stating that "a core factor leading to the conclusion that a state law claim is preempted is that the claim bears on an ERISA-regulated relationship") (citing *Blue Cross of Cal. v. Anesthesia Care Assocs. Med. Group, Inc.,* 187 F.3d 1045, 1053 (9th Cir.1999)), *cert. denied,* 531 U.S. 992, 121 S.Ct. 482, 148 L.Ed.2d 456 (2000); *cf. Smith v. Provident Bank,* 170 F.3d 609, 617 (6th Cir.1999) ("When an ERISA plan's relationship with another entity is not governed by ERISA, it is subject to state law." (citing *Mich. Affiliated Healthcare Sys., Inc. v. CC Sys. Corp. of Mich.,* 139 F.3d 546, 550 (6th Cir.1998)); *Ariz. Carpenters,* 125 F.3d at 722–24).

Finally, we think the Supreme Court's discussion of *Ingersoll* in *Rush Prudential,* although offered in a slightly different context, is consistent with our approach. The *Rush Prudential* Court held that an Illinois statute providing for independent review of disputes between HMOs and primary-care physicians was not preempted, even though ERISA, too, offered a remedy for complaining beneficiaries. *See* 536 U.S. at 359, 122 S.Ct. 2151. It distinguished *Ingersoll* by pointing out that the Illinois law "provides no new cause of action under state law and authorizes no new form of alternate relief." *Id.* at 379, 122 S.Ct. 2151. In essence, then, the argument was that *Ingersoll*'s apparent presumption against additional, non-ERISA remedies did not apply where the result of the alternative state enforcement scheme constituted no more than " 'indirect economic effects' " on the administration of a plan. *Id.* at 381 n. 11, 122 S.Ct. 2151 (quoting *Travelers,* 514 U.S. at 659, 115 S.Ct. 1671). That is, while some alternative remedies interfere with central ERISA purposes, and are therefore preempted, others do not, and therefore are not.

However, before moving on to the question of Congress's intent in this case, we must pause to consider the status of our opinion in *Diduck v. Kaszycki & Sons Contractors, Inc.,* 974 F.2d 270 (2d Cir. 1992). The question there, again, was whether we would permit damages under § 1132(a)(3) against non-fiduciaries who knowingly participate in a breach of fiduciary duty. A critical factor in our affirmative answer to that question was our conclusion that, because ERISA provided equitable relief in those circumstances, any

---

**7.** We have also recently determined that at least some state medical malpractice claims against plan administrators are not preempted by ERISA. *See Cicio,* 321 F.3d at 102–03. That decision is not directly on point, because it "involve[d] the application of duties of conduct that are defined independent of ERISA plans," *id.* at 99–100, rather than, as here, duties that are arguably defined by ERISA itself. Nonetheless, it is worth noting that we there expressed "our skepticism of a line of reasoning that would draw from 'a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans' the elimination of protective standards of professional conduct." *Id.* at 103–04 (quoting *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 90, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983)).

state-law damages remedy would be preempted. *Diduck,* 974 F.2d at 281. We appear to have based that belief on our observation that "ERISA broadly preempts state law causes of action that 'relate to' an ERISA-regulated plan," *id.* at 280 (quoting *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 98, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983)), as well as upon a Ninth Circuit opinion that had reached a similar determination, *id.* at 281 (citing *Gibson v. Prudential Ins. Co. of Am.,* 915 F.2d 414, 417–18 (9th Cir.1990)). Thus the *Diduck* rule,[8] if applied in this case, might require us to find that the Plaintiffs' claims are preempted.

Our preemption analysis in *Diduck,* however, is no longer consistent with prevailing Supreme Court precedent. Indeed, several of our sister circuits have noted that *Travelers* occasioned a significant change in preemption analysis, and required careful reconsideration of any preexisting precedent dependent on the expansive view of "related to" that held sway before it. *See AFTRA,* 303 F.3d at 773; *Ariz. Carpenters,* 125 F.3d at 723; *Coyne & Delany,* 98 F.3d at 1469 n. 14; *cf. Cicio,* 321 F.3d at 99 ("[T]he Supreme Court has … thrown 'cold water' on the idea that state regulation of health and safety is necessarily preempted even when it overlaps with rights protected by ERISA." (quoting *Pegram v. Herdrich,* 530 U.S. 211, 237, 120 S.Ct. 2143, 147

L.Ed.2d 164 (2000))). In one case a panel actually reconsidered its initial holding based on the intervening *Travelers* opinion, concluding that in light of the new standard there was no preemption. *See Ariz. Carpenters,* 125 F.3d at 723. Subsequent Supreme Court opinions have continued to adhere to the less-expansive view of preemption outlined in *Travelers. See, e.g., Rush Prudential,* 536 U.S. at 381 n. 11; *Egelhoff,* 532 U.S. at 146–47. It is true that not all of our pre-*Travelers* opinions necessarily embraced an expansive notion of preemption. In one case, we anticipated *Travelers,* noting that we would not supersede "the historic police powers of the States … unless that was the clear and manifest purpose of Congress." *Aetna Life Ins. Co. v. Borges,* 869 F.2d 142, 144–45 (2d Cir.) (internal quotation marks and citation omitted), *cert. denied,* 493 U.S. 811, 110 S.Ct. 57, 107 L.Ed.2d 25 (1989). At this remove, however, it would be difficult to sort out from *Diduck* considerations the Supreme Court has disavowed from those that might still be permissible. *Cf. Travelers Ins. Co. v. Cuomo,* 14 F.3d 708, 719 (2d Cir.1993) (rejecting argument based on previous panel opinion because earlier analysis was "poisoned" by view since discredited by the Supreme Court), *rev'd sub nom. N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* 514 U.S. 645, 115 S.Ct. 1671, 131 L.Ed.2d 695

---

**8.** We are not certain that *Diduck*'s observations can be minimized as dicta or distinguished. Although there was no state law claim in *Diduck,* the court's assumption that damages would not be available under state law was essential to its reasoning. *See* 974 F.2d at 281. It is true that *Diduck*'s comment that "the availability of equitable relief against non-fiduciaries" requires preemption, *id.,* might conceivably be limited to the facts of the case—i.e., where the defendant non-fiduciaries are participating in a fiduciary breach. Our reliance, however, on the Ninth

Circuit's expansive holding in *Gibson,* 915 F.2d at 417–18 ("The existence of some remedy for misconduct by nonfiduciaries suggests that Congress intended to include their behavior under ERISA."), and our earlier pronouncements in *Smith v. Dunham–Bush, Inc.,* 959 F.2d 6, 9 (2d Cir.1992) ("[A] state law of general application, with only an indirect effect on a pension plan, may nevertheless be considered to 'relate to' that plan for preemption purposes."), suggest that in fact we simply took a very broad view of preemption.

(1995). We also note that the broad view of preemption appearing in *Diduck* is difficult to reconcile with our subsequent and narrower interpretation in *Geller*, 86 F.3d at 23. We therefore conclude that, to the extent that *Diduck* is not distinguishable here, it has, in any event, been superseded.

## B. Whether Congress Intended to Preempt the Trustees' Claims

■ We now come, at long last, to Congress's intent. Again, we begin with the presumption that Congress does not intend to displace state law, especially in traditional areas of state control. *Travelers*, 514 U.S. at 654–55, 115 S.Ct. 1671. Regulating the professions, particularly under a rubric of professional malpractice, is a traditional state function. *See Custer v. Sweeney*, 89 F.3d 1156, 1167 (4th Cir. 1996); *Pappas v. Buck Consultants, Inc.*, 923 F.2d 531, 540 (7th Cir.1991); *Philadelphia Painters*, 879 F.2d at 1152–53; *Harmon City*, 907 P.2d at 1170.

ERISA's principal goal is to "protect . . . the interests of participants in employee benefit plans and their beneficiaries." 29 U.S.C. § 1001(b); *see Boggs v. Boggs*, 520 U.S. 833, 845, 117 S.Ct. 1754, 138 L.Ed.2d 45 (1997). This is not to say that beneficiaries must necessarily prevail in every dispute. Ultimately, as the Supreme Court has observed, the long-term interests of beneficiaries may be better served by offering prospective participating employers a measure of certainty and shelter from undue administrative and litigation costs. *See Varity Corp. v. Howe*, 516 U.S. 489, 497, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996). Thus, the planning interests and administrative burdens of employers and plan administrators are also a significant ERISA concern. *See Travelers*, 514 U.S. at 657, 115 S.Ct. 1671 (noting that "[t]he basic thrust of the preemption clause [is] . . . to avoid a multiplic-

ity of regulation in order to permit the nationally uniform administration of employee benefit plans").

We see relatively little in the central purposes of ERISA that would weigh in favor of preempting the Plaintiffs' claims. Savasta echoes the District Court in arguing that state resolution of disputes between plans and actuaries will necessarily involve the interpretation and application by various state courts of ERISA's actuarial standards, and (presumably) thereby at least complicate employers' and administrators' planning. First, even assuming that ERISA does create any meaningful and enforceable standards for actuarial behavior, those provisions have little to do with the conduct of the plan or its sponsors. *See LeBlanc v. Cahill*, 153 F.3d 134, 147–48 (4th Cir.1998). There is no danger, for instance, that the plan will be subject to two sets of inconsistent state obligations. *Id.* And, as we have said, ERISA does not create a "fully insulated legal world" for plans; they must deal with outsiders, such as landlords or debt-collectors, under the same diverse hodge-podge of state law as any other economic actor. *Rebaldo v. Cuomo*, 749 F.2d 133, 138 (2d Cir.1984), *cert. denied*, 472 U.S. 1008, 105 S.Ct. 2702, 86 L.Ed.2d 718 (1985); *see also LeBlanc*, 153 F.3d at 148 (rejecting preemption argument where "the Pension Fund is simply in the role of an investor allegedly wronged").

Savasta's argument may be, though, that ERISA demands that the core ERISA entities must have certainty as to the standards that will bind their actuaries, if not other outside actors. That is, one of ERISA's express purposes is to ensure "the disclosure and reporting to participants and beneficiaries of financial and other information" pertinent to benefit plans. 29 U.S.C. § 1001(b). Actuaries, plainly, play an important role in such

disclosures. If ERISA's actuarial provisions are enforceable, though, they guarantee at least a floor of responsible reporting standards. State standards, while possibly inconsistent with one another, could only add to the protections afforded to the plan and its beneficiaries. Nor is there any real danger that state interpretation of certain ERISA provisions affecting actuarial conduct—for example, by construing the failure to adhere to them as negligence *per se* under state law—would undermine federal control. *Cf. AFTRA,* 303 F.3d at 780–81 (rejecting argument that state interpretation of ERISA plan provisions requires preemption of state claim); *Coyne & Delany,* 98 F.3d at 1471–72 (same). Even crediting the assumption that exclusive federal jurisdiction ensures a relatively uniform and predictable set of law (an assumption that the history of ERISA caselaw surely undermines), a state interpretation would not interfere with that purpose, because (other than as to the same parties) it would not bind subsequent federal courts. More significantly, the Secretary of Labor is empowered to issue authoritative interpretations of any term in ERISA's actuarial conduct provisions. *See* 29 U.S.C. § 1135. The Supreme Court has entrusted other agencies with centralizing potentially disharmonious court rulings, *see Braxton v. United States,* 500 U.S. 344, 348–49, 111 S.Ct. 1854, 114 L.Ed.2d 385 (1991), and we are confident that we may do the same.

More problematic for Savasta's argument is the fact that it is liability, not immunity, which ultimately can help ensure that the reporting and disclosures demanded by ERISA are made accurately. As this case graphically illustrates, the "appropriate equitable relief" authorized by § 1132(a)(3) will rarely have any meaningful deterrent effect on negligent actuaries, since such relief cannot compare to a common-law action for damages as a stim-

ulant to adherence to the appropriate level of professional performance. True, there are other formal and informal sanctions, such as suspension or termination by the Joint Board for the Enrollment of Actuaries, 29 U.S.C. §§ 1241–42, or damage to a firm's professional reputation. But such broad disincentives operate with uncertain force in particular instances, especially when highly out of proportion (in either direction) to the negligence or malfeasance. Suspension and termination also rely on the scarce resources of the Department of Labor, which although not inconsiderable, are tiny compared to the huge number of plans now in existence. It is highly implausible that a Congress interested in disseminating precise and meaningful plan information would intentionally minimize the incentives for careful behavior of one of the primary guardians of reliable, objective data. *Cf. Morstein v. Nat'l Ins. Servs., Inc.,* 93 F.3d 715, 723 (11th Cir.1996) (rejecting preemption of state fraud claim where it would undermine employer's ability "to rely on the representations of the ... agent regarding the terms of the plan").

Furthermore, immunizing actuaries could harm the financial integrity of the plans Congress intended to protect. As the allegations here illustrate, careless actuarial work can cause plans serious financial damage. Our earlier discussion also demonstrates that ERISA's equitable remedies often do not provide make-whole relief, so that the result urged by Savasta would leave the affected plan with no means for making up its shortfalls. Again, we find it implausible that Congress intended such results. *Cf. AFTRA,* 303 F.3d at 781–82 (arguing that absence of remedial damages under ERISA was a factor weighing against preemption of state tort claim); *Strom v. Goldman, Sachs & Co.,* 202 F.3d 138, 149 (2d Cir.1999) (noting

that Supreme Court has "evidence[d] a clear intention to avoid construing ERISA in a manner that would leave beneficiaries . . . without any remedy at all"); *In Home Health, Inc. v. The Prudential Ins. Co. of Am.,* 101 F.3d 600, 606–07 (8th Cir.1996) (holding that rule leaving health-care providers with no remedy against plan would be contrary to Congress's intentions because it would result in higher costs and other inconveniences to beneficiaries) (citing *Memorial Hosp. Sys. v. Northbrook Life Ins. Co.,* 904 F.2d 236, 247–48 (5th Cir.1990)); *Geller,* 86 F.3d at 23 (" '[I]nsuring the honest administration of financially sound plans' is critical to the accomplishment of ERISA's mission.' " (quoting *Pompano v. Michael Schiavone & Sons, Inc.,* 680 F.2d 911, 914 (2d Cir.1982))); *Diduck,* 974 F.2d at 281 (recognizing that foreclosing damages remedy would interfere with "compelling federal interest in ensuring that employee benefit plan participants and beneficiaries obtain the benefits to which they are entitled"). *But cf. Rutledge,* 201 F.3d at 1222 n. 13 ("[T]he unavailability of a particular remedy does not undermine ERISA preemption.").

We therefore conclude that, especially in light of our presumption in favor of preserving traditional state law, Congress cannot have intended to preempt the Trustees' unexceptional state-law claims. Any other result would threaten the very purposes Congress had in mind when it enacted ERISA.

The judgment of the District Court is Reversed and Remanded for further proceedings not inconsistent with this opinion.