STRAUB, Circuit Judge,
dissenting in part and concurring in part:
I respectfully dissent in part and concur in part.
I concur with part I of the discussion section of the majority opinion finding that Liberty Mutual has standing. For the reasons that follow, I dissent from the majority’s holding that the Vermont statute is preempted by ERISA.
The majority finds that the burden imposed by the Vermont reporting requirement warrants preemption of the statute. This conclusion falters for two primary reasons. First, the reporting requirement imposed by the Vermont statute differs in kind from the “reporting” that is required by ERISA and therefore was not the kind of state law Congress intended to preempt. Second, Liberty Mutual has failed to show any actual burden, much less a burden that triggers ERISA preemption. Rather, the Vermont statute, like others we have previously upheld, does not interfere with an ERISA plan’s administration of benefits. For these reasons, our precedent and that of the Supreme Court do not support the conclusion that the Vermont statute’s reporting requirements pose the sort of threat to “the nationally uniform administration of employee benefit plans” that would trigger preemption. N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 657, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995) (hereinafter “Travelers ”).
Looking at the objectives of ERISA and the impact of the Vermont statute on ERISA plans, as we must in order to determine whether the statute has an improper “connection with” ERISA plans, I conclude that this is not the type of statute that Congress intended to preempt.
ANALYSIS
The preemption clause of the ERISA statute provides that, with certain exceptions not relevant here, ERISA “shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan.” 29 U.S.C. § 1144(a). The Supreme Court has stated that the “basic thrust of the preemption clause ... was to avoid a multiplicity of regulation in order to permit the nationally uniform administration of employee benefit plans.” Travelers, 514 U.S. at 657, 115 S.Ct. 1671. “Pre-emption does not occur, however, if the state law has only a ‘tenuous, remote, or peripheral’ connection with covered plans, as is the case with many laws of general applicability.” Burgio & Campofelice, Inc. v. N.Y. State Dep’t of *512 Labor, 107 F.3d 1000, 1008 (2d Cir.1997) (internal quotations marks omitted) (quoting Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 100 n. 21, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983)).
“Two kinds of state laws relate to ERISA for purposes of preemption: those that mandate employee benefit structures or their administration, and those that provide alternative enforcement mechanisms.” HMI Meek Sys., Inc. v. McGowan, 266 F.3d 142,149 (2d Cir.2001) (internal quotation marks and brackets omitted). The Vermont statute does neither. We have noted that courts are “reluctant to find that Congress intended to preempt state laws that do not affect the relationships among” “the core ERISA entities: beneficiaries, participants, administrators, employers, trustees and other fiduciaries, and the plan itself.” Gerosa v. Savasta & Co., 329 F.3d 317, 324 (2d Cir.2003). The Vermont statute does not even arguably regulate these relationships. Moreover, the Vermont statute does not impose regulations on how plans are to be run or how benefits are to be administered.
Yet the majority takes up Liberty Mutual’s invitation to give the term “reporting” its broadest meaning, and finds the statute is preempted because “reporting” is a “core ERISA function shielded from potentially inconsistent and burdensome state regulation.” (Maj. Op. at 508) While it is certainly true that ERISA’s core areas include “reporting, disclosure, [and] fiduciary responsibility,” Shaw, 463 U.S. at 98, 103 S.Ct. 2890, and that “state laws that would tend to control or supersede central ERISA functions ... have typically been found to be preempted,” Gerosa, 329 F.3d at 324, the majority’s argument misses the nuance of what “reporting” means in the context of ERISA, and ignores the case law’s focus on whether the administration of benefits to beneficiaries is impacted, an issue on which there is no showing.
A. Traditional State Regulation of Health Care and the Presumption Against Preemption
The majority’s finding, hidden in a footnote, that the presumption against preemption does not apply here, flies in the face of clear Supreme Court precedent instructing us to begin with the “presumption that Congress does not intend to supplant state law.” Travelers, 514 U.S. at 654-55, 115 S.Ct. 1671. “[I]n cases like this one where federal law is said to bar state action in fields of traditional state regulation, we have worked on the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.” Id. at 655, 115 S.Ct. 1671 (internal citations and quotation marks omitted). This is because “nothing in the language of [ERISA] or the context of its -passage indicates that Congress chose to displace general health care regulation, which historically has been a matter of local concern.” Id. at 661, 115 S.Ct. 1671.
The majority nonetheless holds that the presumption against preemption does not apply here because “state health data collection laws do not regulate the safe and effective provision of health care services.” (Maj. Op. at 506 n. 8) This contradicts the very Supreme Court precedent the majority relies upon: DeBuono v. NYSA-ILA Medical and Clinical Services Fund, 520 U.S. 806, 117 S.Ct. 1747, 138 L.Ed.2d 21 (1997). In that case, New York imposed a tax on patient services at various health care providers. 520 U.S. at 808, 117 S.Ct. 1747. The Court applied the presumption, reasoning that although the New York law was “a revenue raising measure, rather than a regulation of hospitals, it clearly *513 operates in a field that ‘has been traditionally occupied by the States.’ ” Id. at 814, 117 S.Ct. 1747. The Court further stated that the fact that the challenged law “targets only the health care industry ... supports the application of the ‘starting presumption’ against pre-emption,” because “the historic police powers of the State include the regulation of matters of health and safety.” Id. at 814 & n. 10. DeBuono is indistinguishable from the case at hand. Here, the Vermont statute “targets only the health care industry” and, even if it is not a regulation of health care entities, it certainly “operates in [the] field” of health and safety. Indeed, the stated purpose of the Vermont statute is to help improve health care quality. See Vt. Stat. Ann. tit. 18 § 9410(a)(1) (listing purposes, including “improving the quality and affordability of patient health care”). There should be no question, therefore, that the presumption applies here.
B. There is No Improper “Connection With” ERISA Plans
When analyzing whether ERISA preempts a state law, we apply the two-pronged Shaw test, as narrowed by Travelers’ presumption against preemption. Under that test, we analyze whether a state law has an impermissible “connection with” or “reference to” an ERISA plan. See, e.g., Hattem v. Schwarzenegger, 449 F.3d 423, 428 (2d Cir.2006). Despite paying lip service to the Shaw test, the majority eschews a full analysis in favor of a talismanic recitation of the word “reporting.”
I agree with the majority that because the Vermont statute requires data collection from entities other than ERISA plans, such as hospitals, health insurers, and pharmacy benefit managers, it “functions irrespective of the existence of an ERISA plan” and therefore does not make an improper “reference to” ERISA plans. See Cal. Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., Inc., 519 U.S. 316, 328, 117 S.Ct. 832, 136 L.Ed.2d 791 (1997) (internal quotation marks and ellipsis omitted). The “connection with” prong, on which the majority hangs its hat, instructs us to examine both “the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive” and the “effect of the state law on ERISA plans.” See Egel-hoff v. Egelhoff ex rel. Breiner, 532 U.S. 141, 147, 121 S.Ct. 1322, 149 L.Ed.2d 264 (2001) (internal quotation marks omitted); see also HMI, 266 F.3d at 148 (“Analyzing a state law’s ‘connection’ with ERISA plans requires the courts to consider ERISA’s objectives and the effect of the state law on ERISA plans.”). This analysis leads to the conclusion that the Vermont statute is not preempted.
1. Objectives of ERISA
The objectives of the ERISA statute are not in dispute. Congress “enacted ERISA in 1974 to respond to growing concerns about the risk of employers defaulting on pension plans, which were increasingly widespread but little regulated.” See Mallory Jensen, Is ERISA Preemption Superfluous In the New Age of Health Care Reform?, 2011 Colum. Bus. L.Rev. 464, 472 (2011) (internal footnotes omitted); see also Brendan S. Maher and Peter K. Stris, ERISA and Uncertainty, 88 Wash. U.L.Rev. 433, 440 n. 29 (2010) (“Few dispute that the statute was passed, in part, as a response to several high-profile pension defaults that arose from company failures that devastated the pensions of many workers.”) (citing J.A. Wooten, The Most Glorious Story of Failure in the Business: The Studebaker-Packard Corp. & the Origins of ERISA 49 Buff. L.Rev. 683, 683-84 (2001)). Indeed, the statute itself de- *514 dares that, in passing ERISA, Congress sought to
protect interstate commerce and the interests of participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto, by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts.
29 U.S.C. § 1001(b).[1]
These objectives are reflected in the ERISA reporting and disclosure requirements, which are concerned with the mismanagement of funds and failure to pay employee benefits, and seek information on plan assets or allocation. See 29 U.S.C. § 1023 (requiring publication of annual report to include a financial statement of assets and liabilities, changes in fund balance, disclosures about changes made in the plan, and financial commitments, including loans, leases, and transactions, and an actuarial statement). The plain language of the ERISA reporting requirements shows that they are limited to the furnishing of a summary plan description to plan participants and an annual report to the Secretary. See 29 U.S.C. §§ 1021-BO. The former is essentially a plain-English summary of key plan terms, id. §§ 1021-22, while the latter is concerned with the financial soundness of the plan, id. § 1023. Thus, under ERISA, plans must report information that goes to the financial integrity of the plan.
It is important to recognize that, as Liberty Mutual conceded at oral argument (Tr. at 9), the “reporting” required by ERISA is wholly distinct from the reporting sought by Vermont. As the majority describes in some depth, the Vermont statute seeks information on medical claims data, the services that have been provided to beneficiaries, charges and payments for those services, and demographic information about those receiving the coverage. (Maj. Op. at 508-10) At bottom, the state seeks to collect the information it needs to fulfill its role of providing health care to its citizens. Vermont does not seek information on plan assets, and does not review the allocation or denial of benefits, see Reg. H-2008-01, 21-040-021 Vt.Code R. § 5A(8) (“Denied claims shall be excluded from all medical and pharmacy claims file submissions”), the topics on which ERISA requires reports. Indeed, the Secretary of Labor, who oversees the reporting requirements and is responsible for enforcing and administering Title I of ERISA, has advised us that the focus and purpose of Vermont’s data collection is different from the reporting requirements in ERISA. See Amicus Secretary of Labor Br. at 12.
This contrast between the objectives and reporting requirements of ERISA and those of the Vermont statute suggests that the Vermont statute is not of the type that Congress intended to preempt.
*515 2. Effect of the Vermont Statute on ERISA Plans
We look next to the effect of the Vermont statute on ERISA plans. The Vermont statute asks for after-the-fact information which plan administrators, such as Blue Cross Blue Shield of Massachusetts (“BCBSMA”), already have in their possession. See Tr. at 7-8. Indeed, by all accounts BCBSMA is happy to provide the data Vermont has asked for, and it does so for other clients. Because Liberty Mutual possesses all the information Vermont seeks, the only alleged burden here is providing the data to Vermont in the requested format.
The majority finds that there is an obvious burden connected with the formats and requirements specified by Vermont, although it does not explain exactly how that burden manifests itself. Perhaps this is because Liberty Mutual has failed to provide any details or showing of the alleged burden, arguing only that “all regulations have their costs.” Appellant’s Br. at 28. See also Br. for Amicus Chamber of Commerce at 9 (increased steps required by a TPA to fulfill requirements) and 10 (arguing generally that additional requirements will “cost additional money”).
In as much as this burden is a financial one, as Liberty Mutual suggests, we have stated clearly, as has the Supreme Court, that indirect financial costs from a state law are not a concern unless they “preclude uniform administration practice or the provision of a uniform interstate benefit package.” Travelers, 514 U.S. at 660, 115 S.Ct. 1671. Indeed, our case law addressing statutes which impose added costs on ERISA plans states clearly that an indirect economic impact is sufficient to trigger preemption only if it “produce[s] such acute, albeit indirect, economic effects as to force an ERISA plan to adopt a certain scheme of substantive coverage or effectively restrict its choice of insurers.” Travelers, 514 U.S. at 668, 115 S.Ct. 1671; see also Aetna Life Ins. Co. v. Borges, 869 F.2d 142, 147 (2d Cir.1989) (noting that “indirect economic and administrative effects are not substantial enough ... to persuade us that this is the type of law Congress intended to preempt” and upholding Connecticut escheat law requiring Aetna to pay all unclaimed benefits to the State after three years, even though this would cause, inter alia, an increase in premiums to employers, lower benefits for employees, and lower profits for Aetna).[2] On the record before us, there is no basis to find that the Vermont statute would cause Liberty Mutual to increase its costs more than a de minimus amount to cover the cost of sending information to the state, much less that it would cause a fiduciary to change a plan in any way. See DeBuono, 520 U.S. at 815, 117 S.Ct. 1747 (noting that many state laws of “general applicability” will “impose some burdens on the administration of ERISA plans, but nevertheless do not ‘relate to’ them within the meaning of’ ERISA).
The majority also suggests the Vermont statute is inconsistent with ERISA because of its supposed inconsistencies with other state reporting regimes. To reach this conclusion, the majority relies on language from Fort Halifax Packing Co. v. Coyne, 482 U.S. 1, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987), suggesting that ERISA preempts laws which create conflicting *516 state record-keeping requirements. (Maj. Op. at 505) Fort Halifax involved a preemption challenge to a Maine statute requiring an employer to provide a one-time severance payment to employees under certain circumstances. 482 U.S. at 8, 107 S.Ct. 2211. The Supreme Court found that the statute regulated employee benefits but did not regulate or establish an employee benefit “plan,” and thus was not preempted by ERISA. Id. at 6-8, 107 S.Ct. 2211.
The dicta in Fort Halifax on which the majority relies does not bear the weight the majority places upon it. To the extent Fort Halifax suggests that a state law may not require an ERISA plan to keep records it would not otherwise keep, that concern is not implicated here. The Vermont statute does not require plan administrators to keep any new records, it merely seeks access to the records that are already kept. Fort Halifax does not say anything about when or how a state may demand access to existent records.
Moreover, the language in Fort Halifax describing the “administrative realities of employment benefit plans,” does not relate to all administrative concerns, but rather to the repeatedly articulated concern that there be “nationally uniform administration of employee benefit plans.” Travelers, 514 U.S. at 657, 115 S.Ct. 1671 (emphasis added). See Fort Halifax, 482 U.S. at 9, 107 S.Ct. 2211 (suggesting it is most efficient for plans to have “a uniform administrative scheme, which provides a set of standard procedures to guide processing of claims and disbursement of benefits.” (emphasis added)).
The distinction between general administration and administration of plans, claims, and benefits is important. Many state laws may have an impact on the administration of an ERISA plan — for example, a work-place safety law, a prevailing wage law, or a law that requires companies to report employment data. Such laws may impose additional costs, or require additional administrative resources. But none of these laws impact how benefits are administered to beneficiaries and, therefore, they are not preempted by ERISA. See, e.g., Dillingham, 519 U.S. at 319, 117 S.Ct. 832 (upholding California prevailing wage law); HMI, 266 F.3d at 144 (upholding New York prevailing wage law); Burgio, 107 F.3d at 1003 (same). The reason for our focus on whether a state statute affects the relationships among “the core ERISA entities: beneficiaries, participants, administrators, employers, trustees and other fiduciaries,” see Gerosa, 329 F.3d at 324, is because the concern is about whether the administration of benefits to beneficiaries is affected. The majority ignores this distinction and treats all administrative burdens as weighing in favor of preemption.
The importance of separating any impact on the administration of benefits from general impact upon any administrative concern is clearly articulated in Egelhoff v. Egelhoff ex rel. Breiner, which involved a Washington state statute providing that “the designation of a spouse as the beneficiary of a nonprobate asset is revoked automatically upon divorce.” 532 U.S. at 143, 121 S.Ct. 1322. There, the Supreme Court stated that while “all state laws create some potential for a lack of uniformity,” the concern was specifically whether “differing state regulations affect[ ] an ERISA plan’s ‘system for processing claims and paying benefits.’ ” Id. at 150, 121 S.Ct. 1322 (quoting Fort Halifax, 482 U.S. at 10, 107 S.Ct. 2211). The Court noted that the Washington statute at issue “interfere[d] with nationally uniform plan administration,” as administrators could not “make payments simply by identifying the beneficiary specified by the plan docu *517 ments” but instead had to “familiarize themselves with state statutes so that they c[ould] determine whether the named beneficiary’s status has been ‘revoked’ by operation of law.” Id. at 148-49, 121 S.Ct. 1822. In clear contrast to Egelhoff, there is no argument here that the Vermont statute affects Liberty Mutual’s “system for processing claims and paying benefits.” Id. at 150, 121 S.Ct. 1322 (internal quotation marks omitted).
It follows from these precedents that in order to show that the Vermont statute has a legally relevant effect on ERISA plans, there must be evidence of a burden on the system for processing claims. No such evidence has been provided, and the majority points to none. The only possible conclusion on the record before us is that, other than through potential incidental costs, the Vermont statute does not hinder the national administration of employment benefit plans in any way. No new records need be kept, no distinction in benefits between Vermont and any other state need be made. This ends the inquiry.[3]
C. Reporting Requirements Upheld in HMI and Burgio
Using this same analysis, we twice concluded that ERISA did not preempt the reporting requirements in New York’s prevailing wage law. See HMI, 266 F.3d 142; Burgio, 107 F.3d 1000. In both cases, the New York statute at issue required contractors and subcontractors to produce records showing their compliance with the prevailing wage rate and supplements. See Burgio, 107 F.3d at 1009; HMI, 266 F.3d at 151; N.Y. Lab. Law § 220. In HMI, we noted that although there were indirect effects on ERISA plans, such as “eliminating incentives for them to pool supplement contributions,” the state’s inquiry did not “mandat[e] a particular benefit structure for ERISA plans,” “require employers or ERISA plans to provide specific benefits,” or delve into the internal allocations of benefits within the plan. 266 F.3d at 150-51; see also Burgio, 107 F.3d at 1009 (finding no preemption where law did not “regulate ... the terms and conditions of employee benefit plans”, “prescribe [ ] ... the type and amount of an employer’s contribution to a plan”, or the “nature and amount of the benefits provided”). Rather, we said that “information such as a list of plan participants, payroll lists, the amount of an employer’s contributions and the names of people for whom the employer made contributions are appropriate areas of inquiry” for the state. HMI, 266 F.3d at 151. Both opinions make clear that a state may properly seek information from ERISA plans for its own purposes without triggering preemption so long as the request for information “creates no impediment to an employer’s adoption of a uniform benefit administration scheme,” Burgio, 107 F.3d at 1009. As discussed above, the Vermont statute creates no such impediment, and therefore survives under the same analysis.
The majority attempts to distinguish these cases based on the manner in which Vermont asks to be provided information. *518 But the fact that a particular format is required, without more, is meaningless. The record contains no evidence that the burden of providing data to Vermont (and other states which may ask for it) would keep plans from administering their benefits uniformly and therefore trigger ERISA preemption. Likewise, the majority’s statement that the reporting requirement is “time-consuming and risky” (Maj. Op. at 509) — even if considered relevant under our precedent — is nothing more than pure speculation. There is no evidence to support such a finding.
CONCLUSION
Returning, then, to the language that must guide our inquiry, our decision depends on the objectives of the ERISA statute and the effect of the state law on ERISA plans. Although Congress intended to establish the regulation of employee benefit plans as an exclusively federal concern, it did not intend for health care to become the exclusive purview of the Federal Government. Rather, it anticipated that the States would continue to be involved in providing health care services to their citizens.
Liberty Mutual fails to overcome the presumption against preemption. The Vermont statute regulates health care within that state, while imposing a purely clerical burden on ERISA plans. I acknowledge that because Vermont may not be the only state with this type of law, plans governed by ERISA may need to provide their records in different formats. But our case law does not support a finding that this warrants preemption. Indeed, it says uniformly that an economic burden imposed by a statute of general applicability, which does not affect the benefits that beneficiaries receive or how they receive them, is permissible.
Because the Vermont statute does not have an impermissible “connection with” ERISA plans, I respectfully dissent.

. The Supreme Court has also noted that Representative Dent, the House sponsor of the legislation, "represented that ERISA’s fiduciary standards 'will prevent abuses of the special responsibilities borne by those dealing with plans,’ ” and that the "disclosure and reporting requirements 'will enable both participants and the Federal Government to monitor the plans’ operations.’ ” Fort Halifax Packing Co. v. Coyne, 482 U.S. 1, 15, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987) (quoting 120 Cong. Rec. 29197 and 29935 (1974)). "Senator Williams, the Senate sponsor, stated that these fiduciary standards would safeguard employees from ‘such abuses as self-dealing, imprudent investing, and misappropriation of plan funds.' ” Id. (quoting 120 Cong. Rec. 29932).

. The majority claims that “modest financial burdens’’ are only "tolerable when the state laws imposing them do not directly implicate an ERISA core concern,” (Maj. Op. at 510-11 n. 13) without citing to any authority. This statement is directly contradicted by Borges, where financial burdens were acceptable despite implicating one of the most central ERISA concerns: the payment of benefits.

. Any support that the majority draws from Standard Oil Co. v. Agsalud, 633 F.2d 760, 763 (9th Cir.1980), is misplaced. See Maj. Op. at 505-06. The Ninth Circuit opinion, which the Supreme Court summarily affirmed, does not even mention the reporting requirement in the Hawaii Prepaid Care Act. The Hawaii statute was found to be preempted because it directly and expressly regulated employers and the benefits they provided. The reporting requirement fell along with the rest of the statute without discussion. The fact that Congress did not amend ERISA to except reporting or disclosure requirements says nothing about whether a court asked to evaluate such requirements would find them to he preempted.