332 F.3d 1234
 HONOLULU JOINT APPRENTICESHIP AND TRAINING COMMITTEE OF UNITED ASSOCIATION LOCAL UNION NO. 675; Training Association of United Association Local Union No. 675, Plaintiffs-Appellants,
v.
James H. FOSTER, III, Defendant-Appellee.
Honolulu Joint Apprenticeship and Training Committee of United Association Local Union No. 675; Training Association of United Association Local Union No. 675, Plaintiffs-Appellees,
v.
James H. Foster, III, Defendant-Appellant.
 No. 01-16596.
 No. 01-16641.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted November 6, 2002.
 Filed June 19, 2003.
 
 Michael L. Freed, Michael L. Freed & Associates, Honolulu, HI, for the defendant-appellee-cross-appellant.
 Fred I. Waki, Alston Hunt Floyd & Ing, Honolulu, HI, for the plaintiff-appellant-cross-appellee.
 Appeal from the United States District Court for the District of Hawaii; Barry M. Kurren, Magistrate Judge, Presiding, D.C. No. CV-00-00496-BMK.
 Before SCHROEDER, Chief Judge, ALARCÓN, and FISHER, Circuit Judges.
 SCHROEDER, Chief Judge.
 
 
 1
 This appeal arises from a union's action to recover the costs of training James H. Foster, III as an apprentice in the plumbing and pipefitting industry. Honolulu Joint Apprenticeship and Training Committee of United Association Local Union No. 675 ("HJA") trained Foster for four-and-a-half years on the condition that he work for a union employer upon completion of his apprenticeship. Foster breached his end of the deal by working for a non-union employer and failing to repay the $13,183.92 that HJA expended in training him. HJA brought this action under ERISA, 29 U.S.C. § 1132(a)(3), to recover those costs.
 
 
 2
 The primary question on appeal is whether HJA's action to enforce the terms of its agreement with Foster constitutes "appropriate equitable relief" under § 1132(a)(3). Applying the Supreme Court's recent decision in Great-West Life & Annuity Insurance Co. v. Knudson, 534 U.S. 204, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002), we hold that it does not, and we therefore affirm the summary judgment in favor of Foster. Foster also seeks attorney's fees in defending this action. We hold that the district court properly denied his fee request, so we also affirm the denial of fees.
 
 
 Facts and Procedural History
 
 
 3
 HJA operates an apprenticeship training program funded by contributions from employers who are signatories to local labor management agreements. Foster was enrolled in the apprenticeship program from 1994 until 1998. His apprenticeship was subject to a scholarship loan agreement that required him to repay the costs of his training either by in-kind credit — obtained by working for a participating union employer — or by monetary payment, if he chose to work for a non-union employer. The relevant terms of the agreement are as follows:
 
 
 4
 5. Covenants of the Apprentices. Upon receipt of any training provided pursuant to this agreement, the Apprentice will neither seek nor accept any work as an employee or independent contractor from an employer engaged in nor become an employer engaged in any general mechanical, plumbing or pipefitting work or any other work covered by the Constitution of the United Association of Journeymen and Apprentices of the Plumbing & Pipefitting Industry of the United States and Canada, AFL-CIO, unless such employment is performed under the terms of a collective bargaining agreement that provides for the payment of contributions by such employer to the Committee or like joint apprenticeship committee. Apprentice shall provide Committee with income tax returns and other information requested by the Committee from time to time to verify whether Apprentice is in compliance with this covenant.
 
 
 5
 6. Breach of Agreement. An immediate breach of this Agreement will result if the Apprentice fails to comply with covenants in paragraph 5 above.
 
 
 6
 7. Repayment by Credits. An Apprentice who is not in breach of the Agreement will receive a credit for such employment to reduce the balance of the Scholarship Loan in accordance with the Repayment Schedule in the Note.
 
 
 7
 8. Consequences of Breach. If the Apprentice breaches this Agreement, all amounts due and owing on the Scholarship Loan(s), reduced by any credit received by the Apprentice pursuant to Paragraph 7 hereof, or by any cash payments made, will become immediately due and payable, together with interest at 12% per annum from the date of this Agreement, and all costs of collection hereof, including reasonable attorneys' fees and court costs.
 
 
 8
 On September 23, 1999, Foster notified HJA that he was working for a non-union employer, in breach of paragraph 5 of the loan agreement. HJA brought suit against Foster in state court, but the suit was dismissed on preemption grounds. HJA then filed this action in federal district court.[1] On June 19, 2001, the district court denied HJA's motion for summary judgment and granted Foster's cross-motion for summary judgment. The court found that HJA was not entitled to the relief it sought under ERISA and that Foster was not entitled to an award of attorney's fees. Foster then filed a motion for partial reconsideration with respect to the fee award. The court denied Foster's motion on November 2, 2001. HJA appealed, and Foster cross-appealed.
 
 
 Discussion
 
 
 9
 HJA argues that Foster was unjustly enriched by the apprenticeship training he received and that, as the traditional remedy for unjust enrichment, restitution is available as "appropriate equitable relief" under ERISA, 29 U.S.C. § 1132(a)(3). That subsection provides:
 
 
 10
 A civil action may be brought ... by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this sub-chapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.
 
 
 11
 Id. It is undisputed that HJA is a fiduciary, that Foster is a beneficiary, and that the apprenticeship program is a "welfare benefit plan" under ERISA, 29 U.S.C. § 1002(1)(A). The question is whether the restitution sought by HJA is legal or equitable in nature: only the latter is allowed under § 1132(a)(3). See Great-West Life, 534 U.S. at 218, 122 S.Ct. 708.
 
 
 12
 The Supreme Court cases interpreting § 1132(a)(3) mark a steadily shrinking field of "appropriate equitable relief" available to plan fiduciaries. In Mertens v. Hewitt Assocs., 508 U.S. 248, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993), the Supreme Court held that the "equitable relief" available under that subsection includes only "those categories of relief that were typically available in equity (such as injunction, mandamus, and restitution, but not compensatory damages)." Id. at 256 (emphasis in original). Applying Mertens, we have twice rejected claims by ERISA fiduciaries to recover under the plan's contractual reimbursement provisions. In FMC Medical Plan v. Owens, 122 F.3d 1258 (9th Cir.1997), the beneficiary had agreed to reimburse the plan for any benefits paid by the plan and later recovered from a third party. We held that the plan's action for reimbursement was one at law for breach of contract, and thus not allowed under § 1132(a)(3). Id. at 1262. We reached the same conclusion on similar facts in Reynolds Metals Co. v. Ellis, 202 F.3d 1246, 1249 (9th Cir.2000). Despite eliminating reimbursement as an available remedy, however, both Ellis and Owens left intact the availability of restitution as appropriate equitable relief. See Ellis, 202 F.3d at 1248; Owens, 122 F.3d at 1262.
 
 
 13
 That availability was cut in half last term, when the Supreme Court distinguished between legal and equitable restitution for purposes of § 1132(a)(3). The Court explained that equitable restitution is available only in limited circumstances, where there is an identifiable res:
 
 
 14
 [A] plaintiff could seek restitution in equity... where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession.... But where the property sought to be recovered or its proceeds have been dissipated so that no product remains, the plaintiff's claim is only that of a general creditor, and the plaintiff cannot enforce a constructive trust of or an equitable lien upon other property of the defendant. Thus, for restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession.
 
 
 15
 Great-West Life, 534 U.S. at 213-14, 122 S.Ct. 708 (citations, alterations, and internal quotation marks omitted). In contrast, legal restitution is a remedy where there is no identifiable res:
 
 
 16
 In cases in which the plaintiff could not assert title or right to possession of particular property, but in which nevertheless he might be able to show just grounds for recovering money to pay for some benefit the defendant had received from him, the plaintiff had a right to restitution at law through an action derived from the common law writ of assumpsit. In such cases, the plaintiff's claim was considered legal because he sought to obtain a judgment imposing a merely personal liability upon the defendant to pay a sum of money. Such claims were viewed essentially as actions at law for breach of contract....
 
 
 17
 Id. at 213, 122 S.Ct. 708 (citations and internal quotation marks omitted, emphasis in original). Thus equitable restitution is available where the specific res or funds can be identified and attached by equitable lien or constructive trust, but not where the plaintiff seeks to impose general personal liability as a remedy for the defendant's monetary obligations.
 
 
 18
 In order for HJA to proceed with its action against Foster, the restitution it seeks must be equitable. It is not. Rather, HJA seeks to impose general personal liability on Foster for the costs it advanced under the scholarship loan agreement. HJA's First Amended Complaint says as much: "This is an action for repayment of loans pursuant to apprenticeship scholarship loan agreements and promissory notes entered into between Plaintiff and Defendant." There is no indication that the funds are specific or identifiable, or that HJA seeks anything other than monetary compensation on a breach of contract claim. Indeed, no funds were actually transferred to Foster — HJA merely seeks reimbursement for the costs it incurred for his training.
 
 
 19
 As the Supreme Court explained in Great-West Life:
 
 
 20
 The basis for petitioners' claim is ... that petitioners are contractually entitled to some funds for benefits that they conferred. The kind of restitution that petitioners seek, therefore, is not equitable — the imposition of a constructive trust or equitable lien on particular property — but legal — the imposition of personal liability for the benefits that they conferred upon respondents.
 
 
 21
 534 U.S. at 214, 122 S.Ct. 708 (emphasis in original); see also Westaff (USA) Inc. v. Arce, 298 F.3d 1164,1166-67 (9th Cir.2002). That the loan agreement specifically provides for the remedies sought reinforces the conclusion that this is essentially an action at law to remedy Foster's breach of a legal obligation. The district court did not err in concluding that HJA's action falls outside the scope of "appropriate equitable relief" authorized by ERISA, 29 U.S.C. § 1132(a)(3).
 
 
 Attorney's Fees
 
 
 22
 In his cross-appeal, Foster argues that the district court abused its discretion in declining to award him attorney's fees for successfully defending against this action. Foster sought a fee award under ERISA, 29 U.S.C. § 1132(g), which provides that "[i]n any action under this subchapter... by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." There are five factors that govern the decision to award or deny attorney's fees: (1) the degree of the opposing party's culpability or bad faith, (2) the ability of the opposing party to satisfy an award of fees, (3) whether an award of fees against the opposing party would deter others from acting in similar circumstances, (4) whether the party requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA, and (5) the relative merits of the parties' positions. Hummell v. S.E. Rykoff & Co., 634 F.2d 446, 453 (9th Cir.1980).
 
 
 23
 The district court found no evidence of bad faith, and we find none either. When HJA initiated this action, the Supreme Court had yet to clarify the distinction between legal and equitable restitution for purposes of ERISA. Cf. Great-West Life, 534 U.S. at 214, 122 S.Ct. 708 ("Admittedly, our cases have not previously drawn this fine distinction between restitution at law and restitution in equity.. . ."). The first factor thus weighs against a fee award.
 
 
 24
 The district court found the second factor — ability to pay — to be neutral in light of HJA's uncontested assertion that Foster's legal fees were being paid by an organization composed of non-union employers. The court's finding that both parties are equally capable of paying attorney's fees remains uncontested on appeal, and we agree that the factor is neutral.
 
 
 25
 With respect to the third factor, deterrence, we see no need to deter actions of this kind. This case would have clarified the law in an uncertain area, had the Supreme Court not done so in its intervening decision in Great-West Life. The Supreme Court decided that case well after notice of appeal had been filed here, and indeed on the same day that HJA filed its opening brief. The third factor thus does not favor the award of fees.
 
 
 26
 The fourth factor looks to whether the party seeking fees sought to benefit all participants or beneficiaries in an ERISA plan or to resolve a significant legal question. We agree with the district court that Foster did not act on behalf of others and that it was HJA, not Foster, that helped resolve a significant legal question. The fourth factor does not support a fee award for Foster.
 
 
 27
 The fifth factor weighs the relative merits of the parties' positions. Although Foster is the prevailing party, this factor alone is not a sufficient basis on which to conclude that the district court abused its discretion in denying Foster attorney's fees. The law was not clear at the time HJA commenced this litigation, and HJA had a strong equitable argument, though it was ultimately foreclosed by Great-West Life. Cf. Hope v. Int'l Bhd. of Elec. Workers, 785 F.2d 826, 831 (9th Cir.1986) (upholding denial of fee award where losing party's position was "incorrect," though not "unmeritorious").
 
 
 28
 Our cases have used varying language to discuss how the Hummell factors should apply in awarding fees under ERISA. In cases where a participant or beneficiary has had to resort to litigation against a plan to recover wrongfully withheld benefits, we have stressed that our application of the Hummell factors must recognize the remedial purpose of ERISA in favor of participants and beneficiaries. See, e.g., McElwaine v. U.S. West, Inc., 176 F.3d 1167, 1172 (9th Cir.1999); Nelson v. EG & G Energy Measurements Group, Inc., 37 F.3d 1384, 1392 (9th Cir.1994); Smith v. CMTA-IAM Pension Trust, 746 F.2d 587, 589 (9th Cir.1984). We have thus said that a prevailing participant or beneficiary "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." Smith, 746 F.2d at 589 (citations and internal quotation marks omitted). At the same time, we have gone to some lengths to make clear that the availability of fees is not limited to participants and beneficiaries, and have also approved the award of fees or partial fees to prevailing plans. See, e.g., Estate of Shockley v. Alyeska Pipeline Serv. Co., 130 F.3d 403, 408 (9th Cir.1997). In these cases, where plans have sought fees, we have referred to there being a "level playing field." See id.; see also Cline v. The Indus. Maint. Eng'g & Contracting Co., 200 F.3d 1223, 1236 (9th Cir.2000) (recognizing the "level playing field," but affirming the denial of fees). Our cases are not inconsistent, however. They reflect a recognition of both the remedial purpose of ERISA on behalf of beneficiaries and participants, as well as the clear statutory language that makes fees available to "either party." 29 U.S.C. § 1132(g)(1).
 
 
 29
 In this case, Foster received over four years of apprenticeship training at no cost to himself, and he is not in a position to invoke the remedial purposes of ERISA. At most, only one of the five Hummell factors weighs in his favor. It was not an abuse of discretion for the district to deny his request for fees.
 
 
 30
 AFFIRMED.
 
 
 
 Notes:
 
 
 [1]
 On October 18, 2000, the parties agreed to have this case heard by a magistrate judge, whom we refer to here as the district court