*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0134P (6th Cir.)
File Name: 04a0134p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────

QUALCHOICE, INC.,
　　　*Plaintiff-Appellant,*

　　　*v.*　　　　　　　　No. 02-3614

ROBIN ROWLAND,
　　　*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 01-02605—Kathleen McDonald O'Malley, District
Judge.

Argued: December 3, 2003

Decided and Filed: May 11, 2004

Before: MARTIN and MOORE, Circuit Judges;
McKEAGUE, District Judge.[*]

─────────────

[*] The Honorable David W. McKeague, United States District Judge
for the Western District of Michigan, sitting by designation.

─────────────

## COUNSEL

**ARGUED:** Daran P. Kiefer, KREINER & PETERS CO., Cleveland, Ohio, for Appellant. Donald Cybulski, LOWE, EKLUND, WAKEFIELD & MULVIHILL, Cleveland, Ohio, for Appellee. **ON BRIEF:** Daran P. Kiefer, Ted M. Traut, KREINER & PETERS CO., Cleveland, Ohio, for Appellant. Donald Cybulski, LOWE, EKLUND, WAKEFIELD & MULVIHILL, Cleveland, Ohio, for Appellee.

─────────────

## OPINION

─────────────

KAREN NELSON MOORE, Circuit Judge. Plaintiff-Appellant QualChoice, Inc. ("QualChoice"), a fiduciary and administrator of an employee benefits plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), appeals from the district court's dismissal, for lack of subject matter jurisdiction, of its action to obtain reimbursement under the terms of that plan from Defendant-Appellee Robin Rowland ("Rowland"), a plan participant. QualChoice raises three claims of error on appeal. First, QualChoice argues that the district court had jurisdiction pursuant to 28 U.S.C. § 1331, as federal common law provides federal question jurisdiction for ERISA reimbursement actions. Second, QualChoice argues that the district court had jurisdiction pursuant to 29 U.S.C. § 1132(e)(1), as QualChoice prayed for equitable relief within the meaning of 29 U.S.C. § 1132(a)(3). Third, QualChoice argues that the district court erred in granting Rowland's motion to dismiss for lack of subject matter jurisdiction before allowing QualChoice sufficient time to gather evidence.

For the following reasons, we **AFFIRM** the district court's dismissal for lack of subject matter jurisdiction.

## I. BACKGROUND

On November 16, 2001, QualChoice filed a complaint against Rowland alleging that QualChoice was a plan administrator and fiduciary for an employee benefit plan governed by ERISA, and that Rowland was a participant in that plan. QualChoice further alleged that it had advanced $80,763.58 to Rowland under the plan to cover medical expenses arising from an accident, that Rowland had settled a claim with the third-party tortfeasor, and that under the terms of the plan Rowland was obligated to reimburse QualChoice from the money she received in that settlement. QualChoice prayed for specific performance of the reimbursement provision of the plan and restitution of the money it had advanced under the plan. On January 11, 2002, Rowland filed a Rule 12(b)(1) motion to dismiss QualChoice's complaint for lack of subject matter jurisdiction because QualChoice sought only legal remedies for which ERISA does not provide federal question subject matter jurisdiction. On January 21, 2001, QualChoice filed a motion for leave to file an amended complaint that requested equitable relief in order to avoid dismissal for lack of federal question subject matter jurisdiction.

On February 27, 2002, the district court held a case management conference during which it granted QualChoice's motion for leave to file an amended complaint, but specified that Rowland's motion to dismiss for lack of subject matter jurisdiction would apply to the amended complaint. On February 28, 2002, QualChoice filed an amended complaint that made many of the same factual allegations as its original complaint but newly alleged that it had advanced $101,440.54 to Rowland and prayed for equitable restitution, imposition of a constructive trust or equitable lien, an order declaring that QualChoice "has a right to the equitable remedy of subrogation to obtain

reimbursement . . .[and] any other equitable relief." Joint Appendix ("J.A.") at 11-12 (First Am. Compl. ¶¶ 10, 13, 14). The amended complaint claimed that federal jurisdiction was proper under 29 U.S.C. § 1132(e) and 28 U.S.C. § 1331. On April 29, 2002, the district court entered an order explaining its obligation to ascertain whether federal question subject matter jurisdiction existed and its power to conduct an evidentiary investigation in furtherance of that goal, and requesting that the parties supply the following "information to the Court *as soon as possible*." J.A. at 65-67 (District Ct. Order, 4/29/02) (emphasis added).

- The time and nature of defendant Rowland's accident, as referred to in ¶ 8 of the amended complaint.
- The details of how Rowland received a "fund in settlement of her claims from the above accident," *id.* at ¶ 11 (e.g., whom she sued, what the settlement amount was, and when and to whom settlement amounts were or will be paid).
- Where the monies making up the "fund in settlement" are now.

J.A. at 66-67. (District Ct. Order). One day later, on April 30, 2002, Rowland filed an affidavit sworn by Attorney Claudia R. Eklund ("Attorney Eklund") in response to the district court's order.

Attorney Eklund's affidavit provided the following information. On the evening of November 23, 1994, when a Wheeling & Lake Erie Railroad ("W & LE") "train was crossing an unguarded, unlit track," Rowland drove her car into one of the railcars. J.A. at 68 (Eklund Aff. ¶¶ 2, 3). Rowland was severely injured in the accident and required several hospitalizations, surgical procedures, and eventually a below-the-knee amputation. Rowland incurred medical bills totaling $203,000 as a result of the accident.

Attorney Eklund represented Robin and Robert Rowland in their lawsuit against W & LE for personal injuries and

damages arising out of the collision. W & LE "was an uninsured entity and verified by counsel to be an entity functioning on the verge of bankruptcy." J.A. at 69 (Aff. ¶ 5). "[A] settlement was proposed under which [W & LE] agreed to pay a total of $147,668.00 over the course of forty-four (44) months." J.A. at 69 (Aff. ¶ 6). W & LE agreed to pay an additional $37,500 over the same forty-four months, contingent upon W & LE "obtaining certain concessions from the Surface Transportation Board at a hearing to be held in June, 1998." J.A. at 69 (Aff. ¶ 7). According to Attorney Eklund, QualChoice agreed to waive any subrogated interest it may have had in the proposed settlement agreement. On December 3, 1997, W & LE and Rowland consummated the settlement agreement. The Surface Transportation Board, however, did not grant the concessions upon which the contingent payment of $37,500 was based; therefore, that amount did not become payable.

On December 3, 1997, upon signing the agreement, W & LE paid a lump sum of $25,000 to Rowland. On May 1, 1998, W & LE paid an additional lump sum of $8,000 to Rowland. "[C]ommencing with June 1, 1998, monthly payments of $2,322.00 for the next 44 months were paid by [W & LE], the last of which was received on January 1, 2002." J.A. at 69-70 (Aff. ¶ 12). "From the initial payments, the sum of $13,168 was" used to pay litigation expenses. J.A. at 69 (Aff. ¶ 11). From each monthly check, an amount was deducted to pay the $27,308 attorney fee balance. "Robin and Robert Rowland received a net recovery of $107,192." J.A. at 69 (Aff. ¶ 11).

According to Attorney Eklund, "at this time [April 30, 2002], no 'settlement fund' exists, as the money has been disbursed over the last 44 months on a monthly basis." J.A. at 70 (Aff. ¶ 13).

On April 30, 2002, which was the day after the district court requested that the parties supply additional information and the same day that Rowland filed Attorney Eklund's

affidavit, the district court entered an order granting Rowland's motion to dismiss for lack of subject matter jurisdiction. QualChoice timely appealed the district court's order dismissing this action for lack of subject matter jurisdiction.

## II. ANALYSIS

### A. Standard of Review

We review de novo "a district court's decision to grant a motion to dismiss for lack of subject matter jurisdiction." *Nichols v. Muskingum College,* 318 F.3d 674, 677 (6th Cir. 2003). Although Rowland makes both facial and factual challenges to QualChoice's assertion of federal question subject matter jurisdiction, we only reach the facial challenge, and thus we must view the facts in the light most favorable to QualChoice, the non-moving party. *See Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325-26 (6th Cir. 1990).

### B. 28 U.S.C. § 1331

QualChoice argues that the district court had federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because QualChoice sought reimbursement under the terms of an ERISA plan, which we have held may be obtained under federal common law. To support this argument, QualChoice relies upon *Walbro Corp. v. Amerisure Cos.*, 133 F.3d 961, 965-66 (6th Cir. 1998), in which we held that a plan fiduciary's action for reimbursement is cognizable under federal common law doctrines building on the enforcement provisions of ERISA, and thus falls within the district court's federal question jurisdiction.

Subsequent to our decision in *Walbro*, however, the Supreme Court decided *Great-West Life & Annuity Insurance Co. v. Knudson*, 534 U.S. 204, 209 (2002), in which the Court reemphasized its view "that ERISA is a 'comprehensive and reticulated statute,' the product of a decade of congressional

study of the Nation's private employee benefit system." (citations omitted). The Court further stated that, because of the comprehensive nature of the statute, it has "been especially 'reluctant to tamper with [the] enforcement scheme' embodied in the statute by extending remedies not specifically authorized by its text." *Id*. (quoting *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 147 (1985)). Obeying the Court's direction in *Knudson*, we explicitly held in *Community Health Plan of Ohio v. Mosser*, 347 F.3d 619, 624 (6th Cir. 2003), that federal question jurisdiction does not exist under 28 U.S.C. § 1331 in an action by a plan fiduciary seeking civil enforcement of the terms of an ERISA plan that does not implicate any ERISA provision. In *Mosser*, we held that 29 U.S.C. § 1132(e)(1) did not provide federal question subject matter jurisdiction over the plan fiduciary's action because the relief sought was not equitable within the meaning of 29 U.S.C. § 1132(a)(3). *Id*. at 623-24. We further held that no other ERISA provision permitted the action; therefore, "federal question jurisdiction does not exist under 28 U.S.C. § 1331 [because] ERISA does not authorize the suit." *Id*. at 624. Thus in *Mosser*, we abandoned our position in *Walbro* and held explicitly that there is no federal question subject matter jurisdiction in an action by a plan fiduciary seeking civil enforcement of the terms of an ERISA plan, unless ERISA specifically authorizes the suit. Therefore, QualChoice's action to enforce the reimbursement provision is not cognizable under federal common law, and QualChoice cannot rely upon federal common law to supply jurisdiction over its claim pursuant to 28 U.S.C. § 1331.

## C.  29 U.S.C. § 1132

QualChoice alternatively argues that the district court had subject matter jurisdiction pursuant to 29 U.S.C. § 1132(e)(1) because QualChoice sought equitable remedies within the meaning of 29 U.S.C. § 1132(a)(3). In its amended complaint, QualChoice prayed for restitution, imposition of a constructive trust or equitable lien, "subrogation to obtain

reimbursement," or any other equitable relief that the district court deemed proper. J.A. at 12. QualChoice argues that the settlement money that Rowland recovered from W & LE rightfully belongs to QualChoice; therefore, equity requires imposition of a constructive trust or an equitable lien to prevent unjust enrichment. QualChoice acknowledges that in *Knudson*, the Supreme Court held that if a plan fiduciary seeks restitution from a plan beneficiary, who recovered from another, and the plan beneficiary does not possess the recovered funds, then the action is merely a legal action under the terms of the contract. QualChoice argues, however, that the instant action is distinguishable from *Knudson* because the evidence demonstrates that Rowland possesses the recovered funds.[1] QualChoice further argues that the Supreme Court expressly limited its holding in *Knudson* to situations where the plan participant or beneficiary did not possess the recovered funds, thereby indicating that the result would have been different if the plan participant or beneficiary did possess the recovered funds. The district court rejected this argument, noting that regardless of Rowland's possession of an identifiable fund, QualChoice is still seeking damages for breach of contract, and concluding in any case that the beneficiary in *Knudson* did actually possess the fund, as the beneficiary's settlement recovery there was placed in a Special Needs Trust and a client trust account.

ERISA contains a section specifying the proper procedures for civil enforcement of the statute. Section 1132(e)(1) provides, "Except for actions under subsection (a)(1)(B) of this section, the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, beneficiary, fiduciary, or any person referred to in section 1021(f)(1) of this title." Thus, except for actions by a participant or

---

[1] QualChoice argues that Attorney Eklund's affidavit confirms that Rowland "took possession of [a] settlement 'fund' in the amount of $107,192.00." Appellant's Br. at 24.

beneficiary to recover benefits under the terms of a plan, and another exception not relevant here, § 1132(e)(1) supplies exclusive federal subject matter jurisdiction for the civil enforcement procedures authorized by § 1132.

Title 29 U.S.C. § 1132(a)(3) is the civil enforcement mechanism available to plan fiduciaries. Section 1132(a) provides:

A civil action may be brought —

. . .

(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) *to obtain other appropriate equitable relief* (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

The Supreme Court has emphasized that § 1132(a)(3) does not authorize all relief that a court of equity might award; rather it only authorizes those remedies traditionally awarded by courts of equity. The Court has also made clear that regardless of how plaintiffs label their claims to relief, courts must determine whether the relief sought is truly equitable. *See Knudson*, 534 U.S. at 209-10; *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 256-57 (1993).

The district court predicated its dismissal for lack of subject matter jurisdiction upon its conclusion that the instant case is indistinguishable from *Knudson*. In *Knudson*, the Supreme Court held that a plan fiduciary's action for specific performance and restitution under the plan's reimbursement provision was not authorized by § 1132(a)(3). *Knudson*, 534 U.S. at 210-11. After the plan beneficiary in *Knudson* was injured in a car accident, the plan fiduciary advanced money to cover the cost of medical expenses. *Id*. at 207. The plan beneficiary then received money from a settlement with the

tortfeasor. *Id*. The plan fiduciary brought an action against the plan beneficiary seeking reimbursement under the terms of the plan and prayed for various equitable remedies. *Id*. at 208. The Supreme Court held that the plan fiduciary was not entitled to an injunction against "respondents' failure to reimburse the Plan" or specific performance of the "past due monetary obligation" because such remedies are not typically available in equity. *Id*. at 210-11. In rejecting the plan fiduciary's claim for restitution, the Supreme Court distinguished between legal and equitable restitution. *Id*. at 212-13. The Supreme Court stated:

In cases in which the plaintiff "could *not* assert title or right to possession of particular property but in which nevertheless he might be able to show just grounds for recovering money to pay for some benefit the defendant had received from him," the plaintiff had a right to restitution *at law* through an action derived from the common-law writ of assumpsit. In such cases, the plaintiff's claim was considered legal because he sought "to obtain a judgment imposing a merely personal liability upon the defendant to pay a sum of money." Such claims were viewed essentially as actions at law for breach of contract (whether the contract was actual or implied).

In contrast, a plaintiff could seek restitution *in equity*, ordinarily in the form of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession. A court of equity could then order a defendant to transfer title (in the case of the constructive trust) or to give a security interest (in the case of the equitable lien) to a plaintiff who was, in the eyes of equity, the true owner. But where "the property [sought to be recovered] or its proceeds have been dissipated so that no product remains, [the plaintiff's] claim is only that of a general creditor," and the plaintiff

"cannot enforce a constructive trust of or an equitable lien upon the property of the [defendant]."

*Id.* at 213-14 (citations omitted) (alterations in original). In holding that the plan fiduciary in *Knudson* was not entitled to equitable restitution, the majority wrote that "petitioners seek, in essence, to impose personal liability on respondents for a contractual obligation to pay money — relief that was not typically available in equity. 'A claim for money due and owing under a contract is quintessentially an action at law.'" *Id.* at 210 (quotation omitted). Yet, the majority opinion also emphasized that the plan fiduciary in *Knudson* was not entitled to equitable restitution because

the proceeds from the settlement of respondents' tort action — are not in respondents' possession [; rather] . . . the disbursements from the settlement were paid by two checks, one made payable to the Special Needs Trust and the other to respondents' attorney. . . . The basis for petitioners' claim is not that respondents hold particular funds that, in good conscience, belong to petitioners, but that petitioners are contractually entitled to *some* funds for benefits that they conferred.

*Id.* at 214.

Subsequent to *Knudson*, we held that a claim seeking restitution, or imposition of a constructive trust or equitable lien, is a legal claim if the plan participant or beneficiary does not possess an identifiable fund, regardless of whether the plan participant or beneficiary possesses money recovered from another entity. *Mosser*, 347 F.3d at 624. QualChoice attempts to distinguish this case from both *Knudson* and *Mosser* by claiming that it has alleged that Rowland possesses an identifiable fund, and further that Attorney Eklund's affidavit proves that Rowland possesses the settlement money. Therefore, we must decide whether district courts have jurisdiction over claims seeking restitution, or imposition of a constructive trust or an equitable lien, if the

participant or beneficiary recovered money from another entity, and possesses that recovery in an identifiable fund.

Of the circuits that have been faced with this same issue, two have concluded that a reimbursement action by an ERISA fiduciary is equitable if the participant or beneficiary has recovered from another entity and possesses that recovery in an identifiable fund, but legal if the participant or beneficiary does not possess that recovery in an identifiable fund. *See, e.g.*, *Bombardier Aerospace Employee Welfare Benefits Plan v. Ferrer, Poirot and Wansbrough*, 354 F.3d 348 (5th Cir. 2003); *Admin. Comm. of the Wal-Mart Stores, Inc. Assocs.' Health and Welfare Plan v. Varco*, 338 F.3d 680 (7th Cir. 2003), *petition for cert. filed*, 72 U.S.L.W. 3452 (Dec. 23, 2003) (No. 03-959).

Several of these circuit cases focus largely upon the language throughout *Knudson* emphasizing that the plan beneficiary did not possess the settlement money, and the admonishment near the end of *Knudson* stating that the majority was not foreclosing the possibility that a plan fiduciary might be able to bring an equitable action against the Special Needs Trust or the client trust account. *See, e.g.*, *Varco*, 338 F.3d at 687-88 (concluding that the action sought equitable relief because the plan participant possessed an identifiable fund); *Primax Recoveries, Inc. v. Sevilla*, 324 F.3d 544, 547-48 (7th Cir. 2003) (concluding that the action sought legal relief because the plan participant possessed only an uncashed check from an insurer and the money remained with the insurer; therefore, the participant did not possess an identifiable fund); *Bauhaus USA, Inc. v. Copeland*, 292 F.3d 439, 445 (5th Cir. 2002) (concluding that the action sought legal relief because the settlement money had been paid into the registry of the Mississippi Chancery Court; therefore, the beneficiary did not possess an identifiable fund). Additionally, in a malpractice suit by ERISA trustees against an actuary hired to evaluate a plan, the Second Circuit took a similar position regarding the distinction between equitable and legal relief. *Gerosa v. Savasta & Co.*, 329 F.3d 317, 321-

22 (2d Cir. 2003), *cert. denied*, 124 S. Ct. 435 (Oct. 20, 2003), and *cert. denied*, 124 S. Ct. 929 (Dec. 8, 2003).[2] The *Gerosa* court concluded that the trustees sought legal relief because they sued for damages for the actuary's misconduct, rather than to recover a specific fund from the actuary. *Id*. We find the analysis in these opinions to be unavailing on this issue because the majority in *Knudson* left open the question of whether the plan participant's or beneficiary's possession of an identifiable fund would have allowed the fiduciary to seek equitable relief, and because this analysis ignores the *Knudson* majority's repeated emphasis that a breach of contract claim seeking money damages is a legal action.

Recently, however, the Fifth Circuit issued an opinion providing a more thorough analysis supporting its view of the distinction between legal and equitable relief. *Bombardier*, 354 F.3d 348. Extrapolating from *Knudson*, *Bombardier* creates the following three-part test for determining whether an action by a plan fiduciary seeks equitable relief: "Does the Plan seek to recover funds (1) that are specifically identifiable, (2) that belong in good conscience to the Plan, and (3) that are within the possession and control of the defendant beneficiary?" *Id*. at 356. The first prong of this test asks whether the plan fiduciary "sought to recover funds [that they had paid out previously as benefits] from a specifically identifiable corpus of money." *Id*. The second prong of the test asks whether "the plan's terms contained an express, unambiguous reimbursement provision which made the disputed funds 'belong in good conscience to the plan.'" *Id*. The third prong of the test asks whether the plan participant or beneficiary had actual or constructive possession or control over the funds. *Id*. According to the

---

[2]Notably, in both *Primax Recoveries* and *Bauhaus*, the plan participant or beneficiary never possessed the settlement money, much less maintained it in an identifiable fund. *See Primax Recoveries, Inc. v. Sevilla*, 324 F.3d 544, 548 (7th Cir. 2003); *Bauhaus USA, Inc. v. Copeland*, 292 F.3d 439, 445 (5th Cir. 2002).

Fifth Circuit, the plan beneficiary in *Knudson* did not have actual or constructive possession over the funds because the settlement money "had been placed in a Special Needs Trust, as mandated by California law," but the plan participant in *Bombardier* did have possession because the funds were "held in a bank account in the name of the participant's attorneys," which gave him constructive control, as the attorneys were his agents. *Id*. Finding that the plan fiduciary in *Bombardier* met all of the requirements of the three-part test, the Fifth Circuit concluded that the fiduciary sought to recoup the amount it had paid to the participant in benefits, rather than to impose personal liability on the participant, and therefore, that the fiduciary sought equitable relief. *Id*. at 358.

The Ninth Circuit has taken the opposite view and held that an action by an ERISA fiduciary to enforce a plan reimbursement provision is legal, regardless of whether the plan participant possesses an identifiable fund. *Westaff (USA) Inc. v. Arce*, 298 F.3d 1164, 1167 (9th Cir. 2002), *cert. denied*, 537 U.S. 1111 (2003).[3] In *Westaff*, the plan fiduciary brought an action "seeking a declaratory judgment that the funds in escrow belonged to it and seeking specific performance of [the participant's] obligation to reimburse [it]." *Id*. at 1166. Noting that the Supreme Court has instructed courts to look at "the 'substance of the remedy sought . . . rather than the label placed on that remedy,'" the Ninth Circuit concluded that the plan fiduciary in *Westaff*

---

[3]Recently in *Honolulu Joint Apprenticeship and Training Committee of United Ass'n Local Union No. 675 v. Foster*, 332 F.3d 1234, 1237 (9th Cir. 2003), the Ninth Circuit characterized *Knudson* as holding that the distinction between legal and equitable restitution turns upon the existence of an identifiable fund. *Foster*, however, involved a very different scenario than that involved in *Westaff (USA) Inc. v. Arce*, 298 F.3d 1164 (9th Cir. 2002), *cert. denied*, 537 U.S. 1111 (2003), and in this case, in that the ERISA administrator sought to recoup money that it had spent training the defendant apprentice after the apprentice broke the parties' contract by working for a non-union employer without repaying the cost of training. *Id*. at 1236. We do not view *Foster* as an indication that the Ninth Circuit has retreated from its holding in *Westaff*.

sought "to enforce a contractual obligation for the payment of money, a classic action at law and not an equitable claim." *Id*. In *Westaff*, the Ninth Circuit expressly took the position that the participant's possession of an identifiable fund did not alter the nature of the action. *Id*.

The Third and Fourth Circuits have also applied *Knudson* to determine whether the relief the plaintiff sought was legal or equitable, but have done so only in unpublished opinions involving obscure factual scenarios. *See Sackman v. Teaneck Nursing Ctr.*, No. 02-1083, 2003 WL 23173649 (3d Cir. Dec. 4, 2003); *Local 109 Ret. Fund v. First Union Nat'l Bank*, No. 02-1216, 2003 WL 152851 (4th Cir. Jan 23, 2003). While these cases do not answer the exact question we face, they do reflect an adherence to *Knudson's* admonition to look beyond the label the plaintiff puts on the relief sought.

Since *Knudson* was decided, we have dismissed for lack of subject matter jurisdiction several actions brought by plan fiduciaries seeking reimbursement. *See, e.g.*, *Mosser*, 347 F.3d 619; *Caffey v. Unum Life Ins. Co.*, 302 F.3d 576 (6th Cir. 2002); *Cmty. Ins. Co. v. Morgan*, Nos. 99-6669, 00-5002, 2002 WL 31870325 (6th Cir. Dec. 20, 2002); *Unicare Life & Health Ins. Co. v. Saiter*, No. 00-3856, 2002 WL 1301574 (June 10, 2002); *Sheet Metal Local # 24 v. Newman*, No. 01-3085, 2002 WL 1033739 (May 21, 2002). In each of these cases, we simply held that the plan fiduciary sought legal relief for breach of contract. None of them, however, forecloses jurisdiction over the ostensibly equitable relief QualChoice seeks.

In *Mosser*, the plan had paid for the participant's medical expenses arising out of an accident with a negligent police officer. *Mosser*, 347 F.3d at 621. After the participant recovered from the city through a settlement, he did not reimburse the plan for the money it had paid out pursuant to the terms of the plan. The plan fiduciary then sued the participant, bringing a breach of contract claim "requesting specific performance and restitution" for medical payments

made by the plan. *Id*. at 622. When dismissing the plan fiduciary's action, we noted that the plan fiduciary

> did not, in its complaint, allege that it had given certain funds to [the participant], trace those funds to the settlement funds from [the tortfeasor], allege that [the participant] was unjustly enriched by retaining the settlement funds, and seek the return of the settlement funds in [the participant's possession]. Rather, [the fiduciary] sought "restitution from [the participant] for all covered services."

*Id*. at 624. Although we did not emphasize it our opinion, there was a significant factual difference between *Mosser* and *Knudson*. In *Knudson*, the plan beneficiary never possessed the money she recovered in her settlement with the tortfeasor, as it had been paid directly into a Special Needs Trust and a client trust account. *Knudson*, 534 U.S. at 234. In *Mosser*, however, the plan participant apparently possessed the money she recovered from the city. *Mosser*, 347 F.3d at 622-23.

In *Saiter*, a case very similar to *Mosser*, the plan paid $164,000 in medical expenses after the participant was injured in a car accident by a negligent driver. *Saiter*, 2002 WL 1301574, at *1. The participant then recovered $100,000 from the tortfeasor. The plan fiduciary sued the participant, the tortfeasor, and the tortfeasor's insurance carrier, seeking reimbursement from the participant and asserting subrogation rights against the tortfeasor and the tortfeasor's insurance carrier. When dismissing the fiduciary's action, we stated that such actions "are not authorized claims under ERISA because they seek to enforce plan provisions through legal remedies." *Id*. at *2.

In *Morgan*, a factually complex case, the plan paid $116,000 in medical expenses after the participant was injured in a car accident by a negligent driver. *Morgan*, 2002 WL 31870325, at *1. The participant had a $50,000 underinsured motorist policy with Liberty Mutual and the

tortfeasor had a $100,000 liability policy with State Farm. Because the participant incurred more than $100,000 in medical expenses, Liberty Mutual paid the participant $50,000 on his underinsured motorist claim and in order to protect its subrogation rights, advanced him $100,000 on the State Farm policy. *Id*. at *2. The participant then entered into a settlement agreement with State Farm, Liberty, and the tortfeasor in which the participant was to recover $7,500 in cash and a $30,000 note with 6% secured interest. Before the participant received any settlement money, the plan fiduciary sued the participant, seeking to enforce the plan's reimbursement provision. When dismissing the fiduciary's action, we broadly stated, "The claim of [the plan fiduciary] against . . . the plan participant, for reimbursement under the terms of the plan is squarely precluded by *Knudson*." *Id*. We did not specify whether our holding was limited to situations such as that present in *Morgan*, where the settlement had not yet been paid to the participant. *Id*.

After thorough review, we believe that no clear or binding answer emerges to the question before us: whether a claim maintained by a fiduciary against a participant or beneficiary, who has recovered money from another and possesses that recovery in an identifiable fund, is an equitable claim under 29 U.S.C. § 1132(a)(3). We therefore must determine ourselves how to answer that question, left open by *Knudson*. To do so, we look to *Dobbs on Remedies*, relied upon by the Court in *Knudson*. Professor Dobbs defines restitution as "a return or restoration of what the defendant has gained in a transaction." 1 Dan B. Dobbs, *Law of Remedies* 551 (2d ed.1993) [hereinafter *Dobbs*]. The purpose of restitution "is to prevent the defendant's unjust enrichment by recapturing the gains the defendant secured in a transaction." *Id*. at 552. Both restitution and damages may be appropriate remedies for breach of contract; however, they each measure the remedy differently. *Id*. "Restitution measures the remedy by the defendant's gain and seeks to force disgorgement of that gain. It differs in its goal or principle from damages, which measures the remedy by the plaintiff's loss and seeks to

provide compensation for that loss." *Id*. at 555. Under this analysis, QualChoice's action could be characterized appropriately as one seeking damages for Rowland's breach of contract, in that QualChoice seeks to recoup the money it lost because Rowland breached the plan's reimbursement provision. QualChoice's action could also be characterized appropriately as one seeking restitution for Rowland's breach of contract, in that QualChoice seeks to disgorge the unjust enrichment that Rowland received via her double recovery.

As *Knudson* points out, however, determining that QualChoice can bring an action for restitution is only half of the analysis. To fall within the district court's original federal question jurisdiction under § 1132(e)(1), QualChoice's action must seek equitable rather than legal restitution. *Knudson*, 534 U.S. at 214. According to Professor Dobbs, "Restitution claims for *money* are usually claims 'at law.' . . . On the other hand, restitution claims that may require coercive intervention or some judicial action that is historically 'equitable[]' may be regarded as equitable claims." *Dobbs* at 556 (emphasis added). "The most notable equitable procedures to enforce restitution are the constructive trust, the equitable lien, and subrogation. These procedures give the plaintiff restitution by giving the plaintiff title to, or a security interest in particular property." *Id*. at 565. Therefore, the procedural posture of this case gives rise to a conundrum — QualChoice seeks restitution of money, which is typically a claim at law; however, QualChoice also seeks to obtain restitution by asking the court to impose a constructive trust or an equitable lien upon the identifiable fund of settlement recovery that Rowland allegedly possesses, which is typically an equitable claim. The Fifth and Seventh Circuits hold that *Knudson* indicates that district courts have federal question jurisdiction to impose a constructive trust or an equitable lien in cases such as this — where the plan participant or beneficiary has recovered from another entity and possesses that recovery in an identifiable fund. *Bombardier*, 354 F.3d 348; *Varco*, 338 F.3d 680.

We conclude, however, that the source of the claim asserted by QualChoice is a contract to pay money, and that the procedural mechanisms of constructive trust and equitable lien are not proper mechanisms for enforcing this right, as such relief would not have traditionally been awarded by a court of equity in a breach of contract action. Historically, legal restitution was limited by the concept of formal title. *Dobbs* at 586. Equitable restitution developed to fill the void left by that limitation and allowed plaintiffs, who lacked formal title, to bring actions for restitution. The problem of formal title was irrelevant in cases where the plaintiff sought intangibles, such as money; therefore, all plaintiffs could bring such actions in the courts of law. Historically, when a plaintiff sought restitution of money for breach of contract, he brought an action for assumpsit, which is a legal remedy. *Id*. at 571, 578-79 ("Assumpsit was the common law form of action by which contract claims were redressed.").

Contrary to Rowland's assertions, a plaintiff is not necessarily required to prove wrongdoing by the defendant in order to obtain relief through imposition of a constructive trust or an equitable lien. *Id*. at 597-98. "The constructive trust is based on *property*, not wrongs." *Id*. at 597 (emphasis added). "In the constructive trust case the defendant has legal rights in something that in good conscience belongs to the plaintiff. . . . The defendant is thus made to transfer title to the plaintiff who is, in the eyes of equity, the true 'owner.'" *Id*. at 587. "The equitable lien uses similar ideas to give the plaintiff a security interest in the property or to give the plaintiff only part of the property rather than all of it." *Id*. at 588. It is true that an equitable lien or a constructive trust may be imposed on a particular bank account. *See id*. at 591. The fact that a plan participant or beneficiary places the money he recovered from another in a bank account does not, however, change the nature of the action. The plan may have obligated Rowland to reimburse QualChoice in the event that

QualChoice paid for Rowland's medical expenses, but it did not give QualChoice a property right in any particular fund.[4]

This court has explicitly held that subrogation is not available in a situation such as this, when the plan participant or beneficiary has already recovered, because subrogation allows a plan fiduciary only to step into the shoes of a plan participant or beneficiary and assert the rights of the participant or beneficiary against another; subrogation does not allow a plan fiduciary to obtain a judgment of personal liability against a plan beneficiary or particpant. *Mosser*, 347 F.3d at 623-24; *see also Dobbs* at 588, 604. Therefore, QualChoice may have been able to use subrogation to step into the shoes of Rowland during the settlement negotiations with W & LE, but QualChoice may not now use the doctrine of subrogation to impose personal liability on Rowland.

We are aware of significant scholarly criticism of *Knudson* for defining the scope of relief available under ERISA by looking to historical practice of the courts of England. *See, e.g.*, John H. Langbein, *What ERISA Means by "Equitable": The Supreme Court's Trail of Error in Russell, Mertens, and Great-West*, 103 Colum. L. Rev. 1317, 1318-20 (2003) (arguing that in drafting ERISA, Congress intended to incorporate substantive trust law, including "make-whole relief," such as money damages). The Supreme Court, however, has twice defined the scope of relief available under § 1132(a)(3) of ERISA in terms of the relief "*typically* available in equity." *Mertens*, 508 U.S. at 256-57 (listing "injunction, mandamus, and restitution" as examples of equitable relief); *see Knudson*, 534 U.S. at 213-16 (limiting restitution available under § 1132(a)(3) to equitable restitution). Applying the Supreme Court's cases, we hold

---

[4] The plan states, "If you receive payment, however designated, from a third party, you are *obligated to reimburse QualChoice Health Plan, less a pro rata share of the reasonable attorneys' fees and costs you sustained in obtaining such recovery*." J.A. at 28 (emphasis added).

that a plan fiduciary's action to enforce a plan-reimbursement provision is a legal action, regardless of whether the plan participant or beneficiary recovered from another entity and possesses that recovery in an identifiable fund.

## D.  Additional Discovery

Because we hold that QualChoice's action is a legal one seeking to recover money for Rowland's breach of the plan's reimbursement provision, regardless of whether Rowland possess an identifiable fund, we need not reach QualChoice's argument that the district court abused its discretion by dismissing this action without allowing sufficient discovery and within twenty-four hours of requesting that the parties submit additional information.

## III.  CONCLUSION

Based on the foregoing, we **AFFIRM** the district court's order dismissing this action for lack of subject matter jurisdiction.