RYAN, Circuit Judge.
The plaintiff, Charles Buchanan, appeals the district court’s judgment in favor of the defendant, Aetna Life Insurance Company, on his ERISA claim for disability benefits, and on Aetna’s counterclaim for reimbursement of benefits it overpaid Buchanan. We AFFIRM the court’s judgment in favor of Aetna on Buchanan’s claim, but REVERSE the grant of summary judgment in favor of Aetna on its counterclaim.
I.
Buchanan began working as a computer programmer for Progressive Casualty Insurance Company in September 1996 and was a participant under Progressive’s *306 Managed Disability Benefits Plan, which was administered by Aetna. Under the plan, a participant was eligible to receive disability benefits after a period of 24 months only if he was “not able, solely because of disease or injury, to work at any reasonable occupation.” The plan defined “reasonable occupation” as “any gainful activity for which you are, or may reasonably become, fitted by education, training or experience.”
An eligible plan participant received a monthly disability benefit equal to a percentage of his monthly salary, and the plan permitted Aetna to reduce that monthly benefit by “other income benefits,” which included Social Security Disability Insurance (SSDI) benefits. The plan also provided that the participant was required to repay to Aetna any overpayment of benefits that resulted from the receipt of other income benefits.
II.
In June 1997, Buchanan left work due to hypertension and syncope, and began to receive monthly disability benefits from Aetna in October 1997. In addition, he began receiving SSDI benefits in January 1998. Aetna claims it did not learn about Buchanan’s SSDI payments until September 1999.
In a letter dated October 7, 1999, Aetna informed Buchanan that it had overpaid him by a total of $15,120 as a result of his receiving SSDI benefits in addition to Aetna’s full monthly benefit. In order to recover at least part of that overpayment, Aetna began to withhold benefit payments, but Aetna alleges that approximately $11,000 remains unpaid.
In 2000, Aetna conducted a review of Buchanan’s claim and concluded that he was no longer entitled to disability benefits because he had received benefits for more than 24 months, and the evidence showed that he was able to perform the duties of a reasonable occupation as defined by the plan. In a letter dated July 2000, Aetna informed Buchanan that his benefits were terminated effective May 31, 2000. Buchanan asked Aetna to reconsider its decision, but, in a letter to Buchanan dated April 2, 2001, Aetna upheld its original decision.
Buchanan filed a claim in the federal district court to recover benefits under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), and Aetna filed a counterclaim under ERISA for reimbursement of benefits it allegedly overpaid. Buchanan filed a motion to supplement the administrative record with, among other things, a 1997 MRI film and report that Aetna and its independent medical examiner had allegedly refused to accept. The district court denied that motion. Both parties then filed motions for judgment, and the court granted judgment in favor of Aetna on Buchanan’s claims and Aetna’s counterclaim.
III.
Traditional summary judgment concepts are inapposite to the adjudication of an ERISA action for benefits, brought under 29 U.S.C. § 1132(a)(1)(B), because the district court is limited to the evidence before the plan administrator at the time of its decision, and therefore, the court does not adjudicate an ERISA action as it would other federal civil litigation. See Wilkins v. Baptist Healthcare Sys., Inc., 150 F.3d 609, 617-19 (6th Cir.1998). We review de novo the district court’s ruling regarding an ERISA plan administrator’s denial of benefits, applying the same legal standard as the district court. Whitaker v. Hartford Life & Acc. Ins. Co., 404 F.3d 947, 949 (6th Cir.2005). When the plan provides the administrator discretionary *307 authority to determine eligibility for benefits, the arbitrary and capricious standard of review applies. Id. The district court held that Aetna had discretionary authority under the plan to determine benefit eligibility, and Buchanan appears to agree. Therefore, we review Aetna’s decision denying benefits under the arbitrary and capricious standard of review.
An administrator’s conflict of interest does not alter the standard of review; rather, the court should take that conflict into account when determining whether the administrator’s decision was arbitrary and capricious. Peruzzi v. Summa Med. Plan, 137 F.3d 431, 433 (6th Cir.1998). We must uphold Aetna’s decision “if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence.” Baker v. United Mine Workers of Am. Health & Ret. Funds, 929 F.2d 1140, 1144 (6th Cir.1991). Because Aetna was both the insurer and the plan administrator, it had a conflict of interest.
Although the district court discussed traditional summary judgment standards at some length, the court nevertheless properly applied the arbitrary and capricious standard of review using the evidence available to Aetna at the time of its decision. The court acknowledged Aetna’s conflict of interest and the requirement that it factor that conflict into its review. The court then determined that Aetna did not act in an arbitrary and capricious manner when it terminated Buchanan’s benefits because reports from two independent medical examiners provided a “reasoned explanation” for Aetna’s decision.
Buchanan points out that, in a letter, his doctor stated: “The resulting disability produced by this condition has produced a severe degree of cognitive impairment and fatigability which I strongly feel makes him disabled from working.... I believe Mr. Buchanan is disabled from his previous type of employment (and perhaps from many types of meaningful employment).” (Emphasis added.) But the test, according to the plan language, is whether Buchanan was able to work at a “reasonable occupation,” which is defined in the plan as “any gainful activity.” (Emphasis added.) The record shows that two independent medical examiners concluded that Buchanan could perform meaningful work.
Although Aetna’s April 2, 2001, letter upholding its original decision to terminate Buchanan’s benefits indicates that Aetna reviewed a portion of medical records belonging to someone other than Buchanan, we respectfully disagree with our dissenting colleague’s position that Aetna’s error rendered its decision arbitrary and capricious.
The April 2, 2001, letter contains an incorrect address and social security number, and it states that there is “no record provided of the cardiac cath findings,” but that “[t]here are clear reports ... of panic attacks and anxiety disorder, which responded to Xanax.” Buchanan insists that he has never received a cardiac catheter or taken Xanax to control anxiety, and there is no evidence in the record suggesting he has.
The letter also references the two independent medical examinations Aetna ordered and the letter from Buchanan’s doctor, which provide substantial evidence in support of Aetna’s decision to terminate Buchanan’s disability benefits. There is also no indication that Aetna’s mistake of reviewing a portion of medical records belonging to someone other than Buchanan resulted in a selective, inadequate, or otherwise unprincipled review of Buchanan’s medical records. Therefore, we agree with the district court that the record con *308 tains substantial evidence supporting Aetna’s decision to terminate Buchanan’s disability benefits and that Aetna employed “a deliberate, principled reasoning process” to reach that decision.
We also conclude that the court did not err in denying Buchanan’s motion to supplement the administrative record with, among other things, a 1997 MRI film and report indicating that he suffered a stroke. The district court may consider evidence outside of the administrative record only if “consideration of that evidence is necessary to resolve an ERISA claimant’s procedural challenge to the administrator’s decision, such as an alleged lack of due process afforded by the administrator or alleged bias on its part.” Wilkins, 150 F.3d at 618. Buchanan did not raise a procedural challenge to Aetna’s decision in his motion to supplement the record. He simply argued that “the record is flawed and not developed properly,” and he offered no evidence in support of the motion beyond the mere allegation that Aetna refused to accept the proper MRI film and report.
IV.
Traditional summary judgment concepts do apply to the adjudication of Aetna’s counterclaim for reimbursement. We review the district court’s legal conclusions and its grant of summary judgment in favor of Aetna de novo, using the same Fed.R.Civ.P. 56(c) standard as the district court. Summary judgment is proper only where “the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” Fed.R.Civ.P. 56(c); Appalachian Res. Dev. Corp. v. McCabe, 387 F.3d 461, 463 (6th Cir.2004).
The parties do not dispute the facts. The terms of the plan clearly provide that Buchanan is obligated to reimburse Aetna for the benefits it overpaid as a result of his receipt of SSDI benefits. Buchanan argues only that the law does not provide Aetna with a remedy. Unfortunately, we must agree. The Supreme Court’s decision in Great-West Life & Annuity Insurance Co. v. Knudson, 534 U.S. 204, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002), and our later decision in Qualchoice, Inc. v. Rowland, 367 F.3d 638 (6th Cir.2004), cert, denied, 544 U.S. 942, 125 S.Ct. 1639, 161 L.Ed.2d 510 (2005), prohibit Aetna from recovering the money it overpaid.
29 U.S.C. § 1132(a)(3) provides that an ERISA civil action may be brought:
by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this sub-chapter or the terms of the plan, or (B) to obtain other appropriate equitable relief § to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.
(Emphasis added.) In Knudson, the Supreme Court held that the term “equitable relief’ in 29 U.S.C. § 1132(a)(3) refers to the categories of relief typically available in equity. Knudson, 534 U.S. at 209-10, 122 S.Ct. 708. The Court further explained that not all forms of restitution were available in equity and that “a plaintiff could seek restitution in equity, ... where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant’s possession.” Id. at 213,122 S.Ct. 708.
The money Aetna claims it overpaid to Buchanan is not clearly traceable to particular funds in his possession. Although Aetna characterizes its claim as one for unjust enrichment, it actually seeks “legal *309 relief — the imposition of personal liability ... for a contractual obligation to pay money.” Id. at 221, 122 S.Ct. 708. As we held in Qualchoice, “a plan fiduciary’s action to enforce a plan-reimbursement provision is a legal action,” which 29 U.S.C. § 1132(a)(3) does not authorize. Qualchoice, 367 F.3d at 650.
V.
For these reasons, we AFFIRM the district court’s judgment in favor of Aetna on Buchanan’s claim for benefits under 29 U.S.C. § 1132(a)(1)(B), and we REVERSE the court’s grant of summary judgment in favor of Aetna on the counterclaim for reimbursement of benefits it overpaid and REMAND to the district court.